IN MATTER OF ARBITRATION BETWEEN KEMP, Claimant-Respondent, v. FISHER, Appellant.

Supreme Court

*No. 76–653. Argued March 28, 1979.—*
*Decided May 1, 1979.*
(Also reported in 277 N.W.2d 859.)

For the appellant there were briefs by *Charles P. Dykman* and *Dykman Law Offices* and oral argument by *Jack DeWitt,* all of Madison.

For the respondent there was a brief by *Dominic S. Amato, John A. Fiorenza* and *Teper, Fiorenza, Weiss & Teper, S.C.,* of Milwaukee, and oral argument by *Mr. Amato.*

WILLIAM G. CALLOW, J. This is an appeal from a judgment confirming an arbitration award of $45,000 to Robert Kemp for architect fees in connection with the proposed construction of an apartment complex in Boulder, Colorado. The parties agree the only issue for review is whether the arbitrators were guilty of misconduct in refusing to postpone the hearing and thereby not receiving the appellant's evidence. We hold that the circuit court was correct in concluding that the arbitrators did not abuse their discretion in refusing to adjourn the hearing.

Robert Kemp is an architect. In May or June, 1971, Jerome Fisher, a real estate developer, hired Kemp to draw plans for a proposed 170-unit apartment complex in Boulder, Colorado. The parties executed a standard form contract approved by The American Institute of Architects. The plans and specifications for the project were approved by the city of Boulder, and a building permit issued October 18, 1971. Though financing had not been arranged, construction began by pouring footings in December, 1971, to preserve the appropriate zoning. Construction bids were received until January, 1972. Those bids were rejected on March 31. The form con-

tract called for a professional fee of 4 percent of construction costs. Kemp submitted a bill for more than $70,000 but later limited his claim to $45,000. Without explanation, Fisher refused to pay.

Kemp submitted the claim to arbitration through the American Arbitration Association (AAA) on February 6, 1975, pursuant to the contract. Kemp proposed holding the hearing in Milwaukee. Fisher's attorney answered the claim, maintaining that construction based on the plans was not feasible. He requested that the hearings be held in Denver to accommodate witnesses, suggesting Madison as an alternative site. The AAA scheduled the hearing for November 19–20, 1974, in Madison. It gave the arbitrators discretion to hold a hearing in Denver.

The parties were given an opportunity to strike unacceptable names from a list of prospective arbitrators, and from the names remaining the AAA chose three to act as the arbitration panel.

On October 15, 1975, Fisher's attorney informed the AAA that he could not produce his witnesses in Madison. He said that if a hearing could not be held in Denver, he wished to take the witnesses' depositions and place them in evidence. Kemp's attorney opposed the request to depose witnesses in Denver as untimely and without foundation because there was no showing who the witnesses were or why they would not attend. The arbitration panel ruled that Fisher's attorney could submit affidavits of witnesses who could not attend.

On November 12, 1975, a week before the scheduled hearing, Fisher's attorney requested an adjournment because of a scheduling conflict. The hearing was postponed to May 5–6, 1976. The AAA notice of hearing form stated, among other things, that parties may request a postponement no less than forty-eight hours before the hearing.

At the May 5, 1976, hearing Fisher's attorney requested a continuance because his client was at home ill, and his second witness, William Heinzman, the Denver architect who designed the building as it was ultimately constructed, did not appear. The attorney explained that Fisher's office called that morning to say that he had gone to the doctor the day before with an illness and would not be able to appear at the hearing. The attorney called Fisher during the lunch hour. Fisher told him he had an eye problem and influenza and could not attend the hearing. Fisher's attorney told the panel that it was impossible to get a medical excuse at that time.

The lawyer could not explain Heinzman's absence. He said that 75 to 90 percent of his case was to be Heinzman's testimony, with the remainder Fisher's. In November, 1975, Fisher's attorney had telephone contact with Heinzman who agreed to come to Madison to testify at the November hearings. He said he informed Heinzman by telephone of the adjournment and wrote him a letter February 17, 1976, telling him the dates were changed to May 5 and 6. He again wrote to Heinzman confirming the hearing and notifying him that Fisher would forward an airline ticket and an advance on his fees. Fisher's attorney believed Heinzman was gone by the time the ticket and fee advance would have arrived at his office. He offered no evidence that the fee advance and airline ticket were sent.

Fisher's attorney said that he called Heinzman the week before the hearing and that his answering service said he was out of town and would not be back until May 6 or 7. An affidavit of the attorney, later filed with the circuit court, shows that the call was made May 3 and that the answering service said Heinzman would not return until May 10. The attorney told the panel he contacted a Denver lawyer who was unable to find Heinzman but who did determine from business associates that

Heinzman may have been staying at a Holiday Inn in the San Francisco area. Fisher's attorney phoned every Holiday Inn in the San Francisco area but could not find Heinzman.

Kemp's attorney opposed the request for an adjournment, pointing out to the panel that Kemp had come to Madison from Hawaii, where he lived and worked, and that all the adjournments had been at Fisher's request.

Following a brief recess, the panel denied the requested adjournment. Arbitrator Dudek, speaking for the panel, said that if Fisher was so ill that he could not appear, he should have presented a doctor's statement or had his doctor phone the arbitrators. As to Heinzman, the panel found that it was the responsibility of Fisher's attorney to marshal the evidence in support of his client's case, that the evidence could have been presented by deposition or affidavit, and that there was no assurance that Heinzman would appear at any subsequent hearing if the matter were adjourned.

The hearing proceeded. Kemp's case consisted of his testimony setting forth the basic facts of the transaction. He said Fisher's inability to get financing required rejection of the bids. By cross-examination of Kemp, Fisher's attorney attempted unsucessfully to elicit admissions that the plans were unsound and called for unnecessarily expensive materials.

In a brief statement Fisher's attorney said that Fisher found Kemp's plans to be fraught with serious problems, making construction of the complex, as designed, impossible. Fisher had to hire another architect who drew plans for the complex, as it was eventually built, at a cost of $46,000–$47,000. Fisher's attorney had no direct evidence available.

The arbitration panel chairman summarized the panel's reasons for not granting an adjournment. The panel reasoned that Fisher had offered no medical documenta-

tion to justify his absence, that the architect had been "almost haphazardly left hanging" concerning the required appearance, and that no effort had been made to put his testimony in affidavit or deposition form with or without the presence of Kemp's attorney, noting that such evidence would have been admissible under the arbitration rules. The panel concluded that the presentation concerning adjournment of Fisher's attorney fell "far short of any equities that we are to consider favorably to adjourn this hearing."

On May 18, 1976, the AAA entered the arbitrators' award of $45,000 in favor of Kemp. One week later the AAA directed Fisher to pay Kemp $800 in costs. On May 25, 1976, Fisher applied to the circuit court for Dane County for an order vacating the award. On June 3, Kemp moved the court for an order confirming the award. A hearing on these matters was held November 11, 1976. The court took no testimony. In support of Fisher's application, his attorney submitted an affidavit detailing the circumstances surrounding Fisher's and Heinzman's absences on May 5. The secretary for Fisher's attorney executed an affidavit detailing efforts to locate Heinzman and stating that Heinzman subsequently told her he would testify but had not received any letters from Fisher's attorney, although they were correctly addressed. Attached to the secretary's affidavit were photocopies of two letters dated February 17 and April 23, 1976, to Heinzman notifying him of the hearing dates. No other documentation was submitted on Fisher's behalf except Fisher's own unexecuted affidavit. Kemp's attorney submitted a lengthy affidavit with several attachments evidencing the course of the arbitration from its inception.

Determining that the arbitrators did not abuse their discretion in refusing to grant a continuance, the trial court entered judgment confirming the award.

The issue on appeal is whether the arbitrators were guilty of misconduct in refusing to postpone the hearing within the meaning of sec. 298.10(1)(c), Stats.

Sec. 298.10(1)(c), Stats., requires a court to vacate an award where "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy." Fisher maintains that he established sufficient cause to postpone the hearing, and therefore the arbitrators were guilty of misconduct in refusing to grant the adjournment. Because of the refusal to adjourn, Fisher argues, the arbitrators effectively refused evidence material to the controversy. Kemp maintains that Fisher had a previous adjournment and should have subpoenaed Heinzman or presented his testimony by deposition or affidavit and that Fisher's ailments should have been documented.

Because of this state's policy of encouraging arbitration as an alternative to litigation, arbitration awards are presumed to be valid. Invalidity of the award must be demonstrated by clear and convincing evidence. *Richco Structures v. Parkside Village, Inc.*, 82 Wis.2d 547, 553, 263 N.W.2d 204 (1978); *Scherrer Construction Co. v. Burlington Memorial Hospital*, 64 Wis.2d 720, 726, 221 N.W.2d 855 (1974); *See also: Koepke v. E. Liethen Grain Co.*, 205 Wis. 75, 236 N.W. 544 (1931).

The circuit court concluded the matter of adjournment was clearly within the discretion of the arbitrators and that there was no abuse of discretion because (1) the arbitrators had accommodated Fisher by granting an earlier requested adjournment, and there is a point where there must be finality; and (2) Fisher's attorney had the obligation to get a deposition or produce Heinzman in person.

The trial court's decision that Fisher had not met his burden of proof by clear and satisfactory evidence that

the panel was guilty of misconduct in refusing to postpone the hearing as provided by sec. 298.10(1)(c), Stats., is not erroneous.

Generally, the decision to adjourn a hearing is within the arbitrators' discretion. However, refusal to postpone a hearing which effectively forecloses a party from presenting evidence may constitute an abuse of discretion amounting to misconduct. *A & R Construction Co., Inc. v. Gorlin-Okun, Inc.,* 41 A.D.2d 876, 342 N.Y.S.2d 950, 951 (1973). We agree with the trial court that on these facts the arbitrators did not abuse their discretion in refusing to grant the postponement.

Fisher's attorney, in a letter dated October 15, 1975, to the American Arbitration Association, said he could not produce Denver architect Heinzman in Madison and spoke of taking depositions to be submitted as evidence. He enclosed a petition pursuant to sec. 298.07, Stats., for authorization to depose Heinzman. There was, therefore, some doubt, at least initially, whether Heinzman would be able to appear at the hearing in Madison. In a letter dated December 4, 1975, Fisher's attorney was advised the arbitrators had ruled that affidavits could be used with respect to the Denver witnesses. No affidavit of Heinzman was submitted. In a statement seeking adjournment on May 5, 1976, Fisher's attorney said he had written two letters, dated February 17 and April 23, 1976, to Heinzman advising Heinzman of the May 5–6 hearing dates. He reaffirms this in an affidavit filed with the circuit court. He did not claim to have received any response to those letters. On May 3, three days before the hearing, he attempted to call Heinzman and learned from the answering service that Heinzman's whereabouts were unknown and that he would not return until May 10, 1976. Other efforts to locate Heinzman were unsuccessful.

Despite the panel's request for medical documentation of Fisher's illness, none was provided. Fisher's attorney did not ask for an adjournment to obtain such documentation.

We recognize the general proposition supported by *Gallagher v. Schernecker,* 60 Wis.2d 143, 150–51, 208 N.W.2d 437 (1973), that arbitrators must not refuse to hear material and pertinent evidence. This concern must be balanced against the countervailing and equally important objective of securing finality of the proceedings. The record demonstrates the arbitration panel was very deliberate in weighing the equities on the issue of adjournment. The panel enumerated its reasons for denying the requested adjournment. The record made by Fisher's attorney does not support a conclusion that Fisher has sustained his burden of showing that the arbitrators abused their discretion.

*By the Court.*—Judgment affirmed.