DIVERSIFIED MANAGEMENT SERVICES, INC.,
Plaintiff-Respondent,

v.

Lary SLOTTEN and Dawn Slotten, Defendants-Appellants.

Court of Appeals

No. 83–2411. Submitted on briefs May 18, 1984.—
Decided May 25, 1984.
(Also reported in 351 N.W.2d 176.)

For the defendants-appellants the cause was submitted on the briefs of *John A. Heibl* and *Heibl, Heibl & Crisafi* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Gary A. Montie* and *Montie & Youngerman* of Madison, and *Jack Aulik* and *Aulik, Brill & Eustice, S.C.* of Sun Prairie.

Before Dykman, J., Cane, J., and Bruce F. Beilfuss, Reserve Judge.

DYKMAN, J.  Lary and Dawn Slotten appeal from an order and a judgment confirming an arbitration award.  We hold that the Slottens did not present clear and convincing evidence that one of the arbitrators was "evidently partial" within the meaning of sec. 788.10 (1)(b), Stats.  Because the arbitrators' award is incomplete, however, we remand the case to the trial court with directions to remand a portion of the case to the arbitration panel for further proceedings.  We modify that part of the judgment awarding prejudgment interest at twelve percent, because that rate is in excess of the legal rate set in sec. 138.04, Stats.

The Slottens are dairy farmers.  In October 1981, they entered into a lease agreement with Diversified Management Services (DMS) under which they were to operate a dairy farm on premises owned by DMS.  The Slottens brought approximately fifty head of their own cattle to the farm.  Approximately thirty-five more cattle were purchased by DMS alone or jointly by DMS and the Slottens.  The difference in value between the Slottens' and DMS's contributions of livestock and other property was to be calculated and the lesser contributor was to pay the greater contributor one-half the difference in cash.

The lease contained the following provisions:

VI. DIVISION OF PROPERTY
It is further agreed that at the termination of this lease the tenant shall divide each class of livestock as cows, yearlings, calves, hogs, etc., into two groups of each, and the landlord shall have the choice of either

group in each class of livestock. In case the two groups cannot be made equal in value, as for example where there is an odd number of animals, the difference shall be agreed upon before the choice is made.

. . . .

X. ITEMS NOT SPECIFIED SUBJECT TO ARBITRATION
   A. Matters which are not specified in this lease, but which may arise, shall be settled by agreement between landlord and tenant.
   B. In the event the landlord and tenant cannot reach an agreement on any matter related to this lease or its application, the matter shall be referred to a committee of three arbitrators, one chosen by the landlord, one by the tenant, and the third by the two thus chosen. . . .

The lease ran until March 1, 1983, and was automatically renewed from year to year unless six months' notice of termination was given.

The Slottens became dissatisfied with DMS's performance, particularly with regard to DMS's valuation of the herd the Slottens contributed. On February 20, 1983, they removed the cattle they had originally contributed, their offspring, and one-half the joint herd. DMS filed a complaint and the trial court ordered the parties to arbitrate the dispute. The arbitration hearing was held October 12, 1983.

Before the hearing began, the arbitrators were given copies of the lease and of a stipulation which included a statement of what livestock each party had supplied, what the Slottens had taken and what they had left. At a mid-morning break in the testimony, Lary Slotten and his counsel overheard the arbitrator chosen by DMS say to another arbitrator, "These people took the law into their own hands," "Why would an attorney take such a case?" and that the man chosen by DMS to appraise the Slottens' herd was one of the best. The Slottens withdrew from the arbitration before the after-

noon proceedings began.[1] They were unsuccessful in staying the proceedings. DMS continued its presentation, and the panel awarded DMS $19,350.63 of the $23,377.44 damages it requested.

Each arbitrator subsequently filed an affidavit with the trial court stating that he had formed no predetermined judgments and was not partial to either party. The arbitrator who made the comments also stated that his remarks reflected the thoughts he had as he heard that side of the evidence and that they were not conclusive and did not reflect a final decision. The trial court found no indication that the arbitrators were prejudiced and confirmed the award.

*"Evident Partiality"*

"Because of this state's policy of encouraging arbitration as an alternative to litigation, arbitration awards are presumed to be valid. Invalidity of the award must be demonstrated by clear and convincing evidence." *In Matter of Arbitration Between Kemp v. Fisher*, 89 Wis. 2d 94, 100, 277 N.W.2d 859, 862 (1979). The grounds for vacating an award are set out in sec. 788.10(1), Stats.:

---

[1] Some federal courts have held that arbitration proceedings may be stayed in the exercise of the court's equitable jurisdiction, *see Leesona Corp. v. Cotwool Mfg. Corp., Judson Mills Div.*, 315 F.2d 538, 542 (4th Cir. 1963), or when it is necessary "to prevent a manifest injustice." *See Aerojet-General Corp. v. American Arbitration Ass'n*, 478 F.2d 248, 251 (9th Cir. 1973). Appellants could not unilaterally avoid the hearing by simply refusing to participate further, however. Their course was to make their objection known to preserve their claim for further challenge and then proceed with the hearing. *Garfield & Co. v. Wiest*, 432 F.2d 849, 853 (2d Cir. 1970), *cert. denied*, 401 U.S. 940 (1971); *Order of Railway Conductors, Etc. v. Clinchfield R. Co.*, 407 F.2d 985, 989 (6th Cir.), *cert. denied*, 396 U.S. 841 (1969). When they chose to leave they did so at their own peril.

(a) Where the award was procured by corruption, fraud or undue means;

(b) Where there was evident partiality or corruption on the part of the arbitrators, or either of them;

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

Section 788.10, Stats., is nearly identical to 9 U.S.C.A. sec. 10 (West 1970), the Federal Arbitration Act.[2] Federal cases construing the federal act therefore are persuasive authority for our interpretation of sec. 788.10. *First Wisconsin Nat. Bank v. Nicolaou,* 113 Wis. 2d 524, 532, 335 N.W.2d 390, 394 (1983).

When a claim of evident partiality is made, "the court must ascertain from such record as is available whether the arbitrators' conduct was so biased and prejudiced as to destroy fundamental fairness." *Catz American Co. v. Pearl Grange Fruit Exchange, Inc.,* 292 F. Supp.

---

[2] 9 U.S.C.A. sec. 10 (West 1970) provides that the district court may vacate an arbitration award:

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

549, 551–52 (S.D. N.Y. 1968). Even an appearance of bias will warrant vacation of an award, if it arises because of undisclosed business or personal relationships between an arbitrator and a party or a party's representative. *Richco Structures v. Parkside Village, Inc.*, 82 Wis. 2d 547, 558, 263 N.W.2d 204, 211 (1978). *See also Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145 (1968) (award vacated because arbitrator's undisclosed business dealings with party created appearance of bias).

It is not unusual, however, for members of a decision-making body to take an initial view of a case along the lines of the evidence first presented, before they hear the opposing side's version of events. "As long as [the arbitrator's] view is one which arises from the evidence and the conduct of the parties it cannot be fairly claimed that some expression of that view amounts to bias." *Ballantine Books, Inc. v. Capital Distributing Co.*, 302 F.2d 17, 21 (2d Cir. 1962). It is undisputed that the Slottens did not abide by the agreement to divide the livestock with DMS upon termination of the lease. Further, the arbitrator stated in his affidavit that his remarks represented an initial impression, not a final conclusion. The final award was unanimous and did not give DMS all it requested. The arbitrator's expression of a high opinion of the expertise of DMS's appraiser, although undoubtedly discouraging to the Slottens, does not demonstrate that the arbitrator was prejudiced against them so as to "destroy fundamental fairness." *Catz American*, 292 F. Supp. at 552. The Slottens have not met their burden of showing evident partiality by clear and convincing evidence.

DMS argues that the "modern view" of arbitration is that the arbitrators chosen by the parties are expected

to be biased in favor of the choosing party. We do not accept that view. If parties are to be encouraged to submit their disputes to arbitration as an alternative to litigation, they must be assured an impartial tribunal.

The *Richco* court stated that it would construe sec. 788.10 (1) (b), Stats., "in the context of [a] clear legislative intent to require disinterested arbitration." 82 Wis. 2d at 557, 263 N.W.2d at 210. In *Commonwealth Coatings*, 393 U.S. at 147, the Supreme Court stated that sec. 10 (a) and (b) of the federal arbitration act "show a desire of Congress to provide not merely for *any* arbitration but for an impartial one." Section 788.10 (1) (b) provides that awards shall be vacated upon a showing of evident partiality on the part of *either* of the arbitrators. This language demonstrates that the legislature did not contemplate partisan arbitrators.

*Remand*

■

The Slottens request that the award be vacated because it is not "mutual, final and definite." Sec. 788.10 (1) (d), Stats. The award grants the Slottens one-half of their expenses for December 1982 through February 1983, but contains no dollar amount for that award. It also grants DMS one-half the value of corn the Slottens sold, but contains no dollar amount for that award. We conclude that the matter of the expenses and the corn should be remanded to the panel for completion.

In *Enterprise Wheel & Car Corp. v. United Steelworkers*, 269 F.2d 327, 332 (4th Cir. 1959), *aff'd in part, rev'd in part on other grounds*, 363 U.S. 593 (1960), the court noted that it had generally been held that arbitration awards must be vacated when not certain, but declined to apply that rule in the case before it. It stated that the rule had been developed at a time when the courts "looked with disfavor upon arbitration proceed-

ings,"[3] but that since then, Congress had "clearly indicated that the arbitration of grievance disputes for the preservation of industrial peace is to be encouraged and the Supreme Court has directed the federal courts to fashion a federal substantive law in accordance with this policy." *Id.*

The Wisconsin Supreme Court does not look with disfavor upon arbitration, but rather has encouraged it as an alternative to litigation. *Kemp*, 89 Wis. 2d at 100, 277 N.W.2d at 862; *In re Lower Baraboo River Drainage District*, 199 Wis. 230, 239–40, 225 N.W. 331, 335 (1929). We are therefore in much the same position as was the Fourth Circuit Court of Appeals in *Enterprise Wheel & Car Corp.*, 269 F.2d at 332. The purpose of arbitration is to obtain a speedy, inexpensive and final resolution of disputes, and thereby avoid the expense and delay of a protracted court battle. Vacating the entire award here, and remanding for rehearing, would undercut the purpose of submitting the dispute to arbitration in the first place. We do not believe the legislature intended

[3] *See La Vale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569, 572 (3d Cir. 1967), in which the court explained the rule that an arbitrator who had issued an award was *functus officio* and could do nothing more in regard to the arbitration grew out of an [U]nwillingness to permit one who is not a judicial officer and who acts informally and sporadically, to re-examine a final decision which he has already rendered, because of the potential evil of outside communication and unilateral influence which might affect a new conclusion. The continuity of judicial office and the tradition which surrounds judicial conduct is lacking in the isolated activity of an arbitrator. . . . This policy of finality, founded on practical considerations, is nourished by the primitive view of the solemnity of all judgments. From it, reinforced by the enormous fines which King Edward I levied to replenish his treasury on his judges for erasing or altering their records, came the ancient common law rule that a judgment, once enrolled on parchment, was unalterable even for the correction of a manifest mistake. [Footnote omitted.]

an entire second hearing be held in order to remedy a minor omission from an arbitration award.

*Interest*

The arbitration award recommends that interest be awarded DMS at the annual rate of twelve percent, to run from March 1, 1983 to the time "this arbitration is settled." The trial court ordered the Slottens to pay twelve percent annual interest on the award from March 1, 1983.

Where no other rate is clearly expressed in writing, the interest on obligations runs at the legal rate of five percent per year. Sec. 138.04, Stats. The lease between the Slottens and DMS does not specify what rate of interest is to be applied to amounts due under it. Interest will therefore run at an annual rate of five percent for the time between March 1, 1983, and December 14, 1983, when judgment was entered. *See In Matter of Guardianship & Estate of P.A.H.*, 115 Wis. 2d 670, 677, 340 N.W. 2d 577, 581 (Ct. App. 1983) (prejudgment interest to run at statutory legal rate of five percent).

The trial court is instructed to remand the expenses and corn portion of this case to the arbitration panel for proceedings to determine the value of the corn the Slottens sold and the amount of the joint expenses due them from DMS. The judgment and order, as modified with regard to the amount of interest on the judgment, are affirmed.

*By the Court.*—Order and judgment affirmed in part, modified, and remanded with directions to remand in part to the arbitrators.