IN the MATTER OF the ARBITRATION OF a DISPUTE BETWEEN the MILWAUKEE TEACHER'S EDUCATION ASSOCIATION & the MILWAUKEE BOARD OF SCHOOL DIRECTORS: MILWAUKEE BOARD OF SCHOOL DIRECTORS, Petitioner-Respondent,

v.

MILWAUKEE TEACHERS' EDUCATION ASSOCIATION, Respondent,

Robert FISHER, Proposed Intervenor-Appellant.

Court of Appeals

*No. 87–1239. Submitted on briefs December 1, 1987.—Decided February 24, 1988.*

(Also reported in 422 N.W.2d 149.)

For the petitioner-respondent the cause was submitted on the briefs of *Grant F. Langley,* city attorney and *Stuart S. Mukamal,* assistant city attorney, of Milwaukee.

For the proposed intervenor-appellant, the cause was submitted on the briefs of *Walter F. Kelly,* of *Sutton & Kelly,* of Milwaukee.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

WEDEMEYER, J. Robert Fisher appeals from the judgment and order of the circuit court denying his motion to intervene in the circuit court proceedings which confirmed an adverse arbitration award. Fisher raises two issues: (1) whether Wisconsin law requires that he can intervene in circuit court ch. 788 arbitration proceedings concerning an adverse award when his union, due to a conflict of interest, would not proffer certain arguments as to the invalidity of the award; and (2) whether Wisconsin law requires that he can have independent representation in arbitration proceedings when his union cannot pursue certain evidence due to a conflict of interest. Because Fisher was given fair representation by the union he had no

standing to intervene or to have independent representation, and because his refusal to pursue remedies available to him other than arbitration waived any right to raise objections based on his union's alleged conflict of interest, we affirm.[1]

## FACTS

On September 18, 1985, the Milwaukee Board of School Directors (MBSD) discharged Fisher for gross sexual misconduct against a fellow teacher who was also a union member.[2] The Milwaukee Teachers' Education Association (MTEA), Fisher's union, appealed his discharge to arbitration pursuant to the arbitration clause in the MBSD/MTEA collective bargaining agreement in effect for the years 1982–1985.

Before the arbitration proceedings commenced, Fisher sought MTEA's permission to have outside counsel intervene on his behalf. On two occasions, MTEA denied Fisher's request, but told him that if he desired to proceed with outside counsel he was free to do so in a forum other than that provided by the bargaining agreement. In addition, MTEA offered him the option of adjourning the impending arbitration proceedings, should he elect an alternate forum. Fisher did not choose to proceed in a different forum.

Fisher also sought leave of the arbitrator to intervene, but this request was also denied. Finally, Fisher elected to go to arbitration and was represent-

---

[1]The judgment and order confirmed the arbitration award in its entirety, and denied the union's motion to vacate and/or modify the arbitration award. Since the union has not appealed from this decision, the confirmation of the arbitration award is not at issue.

[2]The name of this individual is irrelevant to this appeal.

ed by MTEA's attorneys throughout the entire proceeding. On January 26, 1987, after a thirteen-day hearing, the arbitrator issued an award sustaining Fisher's discharge based on a finding of "just cause."

MBSD then filed a motion and an amended motion in the circuit court to confirm the award. MTEA opposed the motion, and moved the circuit court to vacate and/or modify the award. Again, Fisher attempted to intervene individually by outside counsel. MBSD objected, arguing that he had no standing to intervene. The court denied Fisher's motion to intervene as an independent party, found that no grounds existed for the vacation or modification of the award, and granted the motion to confirm the award. Fisher appeals from only the denial of his right to intervene as an independent party.

## STANDING TO INTERVENE

Fisher first contends that Wisconsin law requires that he be allowed to intervene in the ch. 788 confirmation proceedings because of his union's refusal to proffer certain arguments as to the invalidity of the award due to its conflict of interest. He relies on Wisconsin labor relations common law, sec. 803.09(1) and (2), Stats., and his constitutional right to due process of law. We are not persuaded by any of his arguments.

The first hurdle Fisher must surmount is whether he has standing to intervene. To answer this question he will look to federal case law, because the federal counterparts of the relevant Wisconsin arbitration statutes are nearly identical. *See Diversified Management Servs., Inc., v. Slotten,* 119 Wis. 2d 441, 446, 351

N.W.2d 176, 179 (Ct. App. 1984); 9 USC secs. 9–11 (1982) and secs. 788.09–11, Stats.

In *F.W. Woolworth Co. v. Miscellaneous Warehousemen's Union,* 629 F.2d 1204 (7th Cir. 1980), *cert. denied* 451 U.S. 937 (1981), the court allowed individual employees to intervene to appeal an order setting aside an arbitration award in their favor. It did so, however, only after reaffirming the following principle: "individual employees may not intervene in or maintain suits under the collective bargaining agreement to set aside arbitration awards reached in pursuance of the grievance procedure, particularly in opposition to the union, so long as the union has represented the employees fairly." *Id.* at 1210 (emphasis omitted). The basis for this principle is that the collective bargaining agent is the exclusive representative of the labor unit and of all its individual members. *See Acuff v. United Papermakers and Paperworkers,* 404 F.2d 169, 172 (5th Cir. 1968), *cert. denied,* 394 U.S. 987 (1969). Thus, the employee, being part of the whole bargaining unit, in the absence of unfair representation, is not a proper party under ch. 788 to the arbitration proceeding initiated under the agreement. *See id.* at 171 n. 2 (union and company, not the employees, were parties to the arbitration); *see also McNair v. United States Postal Service,* 768 F.2d 730, 735 (5th Cir. 1985) (aggrieved worker normally lacks standing to attack in court the results of the grievance process).

■ It is self-evident from the record that in spite of Fisher's attempts to intervene, MTEA, MBSD, the arbitrator and finally the circuit court rejected his efforts because as a union member, and by virtue of the collective bargaining agreement which made

MTEA his representative, he had relinquished his right to act independently.[3] Fisher has no standing to intervene in confirmation or other proceedings in the absence of unfair representation by the union.

## FAIR REPRESENTATION

The fair representation rule can be stated as follows: "[t]he power to settle grievances is vested in the collective bargaining representative subject to a fiduciary duty of fair representation." Note, *Labor Law—Right of Individual Employees to Notice of Arbitration Proceedings*, 1960 Wis. L. Rev. 324, 326. Since Fisher is not a party to the proceedings the only way he can attack the results of the grievance process is to prove that the union breached its duty of fair representation. *See F.W. Woolworth*, 629 F.2d at 1210. "A breach of the statutory duty of fair representation occurs only when a union's conduct towards a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967).

The question we must next answer is whether MTEA afforded Fisher fair representation in the manner in which it processed his grievance for discharge.[4] Fisher claims fair representation was not

---

[3]The collective bargaining agreement provides that only MTEA, on behalf of its representative teachers, has the authority to invoke the arbitration process. It logically follows that in such process, in the absence of provisions to the contrary, only MBSD and MTEA are the proper parties to the proceedings, and they alone have standing to arbitrate.

[4]We do so without deciding whether Fisher is utilizing the correct forum for determining the issue. *See McNair*, 768 F.2d at

provided, because of an alleged conflict of interest arising from a preliminary investigation of the circumstances by the union before any action was taken against him. We are not persuaded.

The circuit court, after reviewing the material submitted to it in support of Fisher's motion to intervene, stated, "I am satisfied that [the] representation given your potential client here by the union was more than adequate ... ." We concur.

Our review of the record reveals the following: Fisher's conduct caused the victim to confer with the school principal. When there was no resolution of the complaint, the principal referred her to a teacher who was the school's human relations officer and an MTEA building representative. After two meetings, this teacher requested that the victim contact MTEA for additional advice. She next met with an MTEA assistant executive director, who explained her options to her. The victim elected to make a written record of Fisher's conduct.

She again met with representatives of MTEA, who reviewed the contents of her statement. It was on this occasion that MTEA representatives advised her that if she filed a complaint against Fisher, MTEA would represent Fisher and not her. Regardless, she filed a statement with her principal, who shortly thereafter issued a misconduct letter which initiated the misconduct proceedings. Three meetings were conducted concerning the claim before there was a hearing before the school board. At those meetings, Fisher had union representation, and was given the opportunity to present evidence and to cross examine

---

735 (an aggrieved employee may sue his union if it has breached its duty of fair representation).

the witnesses who appeared on behalf of the victim. At the school board meeting, Fisher had representation and again had the opportunity to present evidence and cross-examine the employer's witnesses.[5] Fisher also had legal representation by the union at the arbitration proceedings and at the circuit court confirmation proceedings.

From this review of the record, we conclude that MTEA did not deny Fisher fair representation in the manner in which it processed his discharge grievance. It is uncontested that MTEA represented Fisher at each of the six stages constituting this total grievance proceeding. We also can find no basis for Fisher's claim of a conflict of interest.[6] MTEA had a duty to investigate and a duty to defend. It discharged both responsibilities fully. Fisher has not shown that the union's conduct towards him was arbitrary, discriminatory, or in bad faith. *See Vaca,* 386 U.S. at 190.

## INTERVENTION STATUTE

Fisher argues that under sec. 803.09, Stats., his intervention was required. For several reasons, we disagree.

---

[5]Fisher claims in his brief that MTEA regular counsel withdrew when the case was heard by the Board and he was represented by independent counsel. He should have then been able to reveal the "conflicts of facts" on which he bases his conflict of interest claim.

[6]Fisher argues that Wisconsin labor relations common law has recognized a right to intervention where there is a conflict of interest and cites to *Clark v. Hein-Warner Corp.,* 8 Wis. 2d 264, 99 N.W.2d 132 (1959), *cert. denied,* 362 U.S. 962 (1960), and *Acuff,* 404 F.2d at 171 n. 2, 3. Because these cases are clearly distinguishable, and because we have concluded there is no basis for Fisher's claim of a conflict of interest, we do not further discuss these cases.

Section 803.09(1), Stats., requires intervention "unless the movant's interest is adequately represented by existing parties." We conclude that our discussion concerning MTEA's fair representation of Fisher's interest more than adequately answers this argument, and we eschew any further comment.

Fisher points to sec. 803.09(2), Stats., as an additional basis to allow intervention. Subsection (2) is permissive in nature and is subject to the discretion of the trial court. A proper act of discretion is the explication of the reasoning process demonstrating the basis for the determination by the trial court. *See McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512, 519 (1971). Given such explication, and if it does not apply improper factors or principles of law, we shall not reverse the trial court's determination. *See id.* It is evident from the record that the trial court considered all of the materials before it when entertaining Fisher's motion for intervention, and having so acted, declared that it was satisfied that the representation given Fisher by the union was more than adequate. Implicit in this statement is the consideration of whether fair and adequate representation took place. Based on our previous conclusion that Fisher had fair representation, the trial court did not misuse its discretion in denying intervention on this basis.

## DUE PROCESS

Fisher claims that the denial of his intervention deprived him of due process of law. He bases his claim on his constitutional right to a meaningful opportuni-

ty to be heard on the merits. He claims that he was denied the means to present to the arbitrator the full merits or vital aspects of his case. Fisher has not identified or explained what vital aspects of his case were not presented, other than to claim that he was not privy to the union's preliminary investigation of the matter and that conflicts of fact arose from it and required independent representation. In the absence of a more definite showing of the vital aspects or full merits of his case, we cannot conclude that there has been any denial of due process. Furthermore, Fisher's claim of lack of due process is particularly unpersuasive in light of the more than adequate representation provided by the union, and our agreement with the trial court's statement that Fisher had due process *ad nauseam.*

## INDEPENDENT REPRESENTATION

Lastly, Fisher contends that he was entitled to either corepresentation or independent representation in the arbitration proceeding when his union did not pursue certain evidence due to a conflict of interest. We disagree.

We have searched the record before us and are at a loss to ascertain the basis for this contention. The absence of any offering of the proposed evidence to the trial court or to us, coupled with our earlier conclusion that Fisher received fair representation convinces us to reject this contention.

## WAIVER

As a final note, Fisher's conduct throughout the entire grievance procedure is important to the resolu-

tion of this appeal. Although Fisher did seek independent representation at the complaint stage and just prior to the commencement of the arbitration proceeding, he was also given the option to utilize a tribunal other than that offered by the collective bargaining agreement and to adjourn the arbitration hearing until the alternate proceeding was completed.[7] Faced with this clear-cut choice, Fisher opted for arbitration and, with it, sole representation by MTEA and its counsel. We deem that this decision by Fisher constituted a waiver of any claims for a right to intervene in the arbitration proceedings or to be entitled to independent or corepresentation at arbitration based on a conflict of interest.

*By the Court.*—Judgment and order affirmed.

---

[7]The Supreme Court has stated that "[i]f a grievance and arbitration procedure is included in the contract, but the parties do not intend it to be an exclusive remedy, then a suit for breach of contract will normally be heard even though such procedures have not been exhausted." *Vaca,* 386 U.S. at 184 n. 9. Similarly here, if the parties agreed that the arbitration was not the exclusive remedy, then Fisher could have proceeded in a different forum.