43 F.3d 1041
 26 Bankr.Ct.Dec. 649, 1995 Fed.App. 5P
 In re: TIME CONSTRUCTION, INC., Defendant.
8300 NEWBURGH ROAD PARTNERSHIP, a Michigan partnership;
Edio De Ciantis; Vincent Mancuso, Jr.; and
Mitchell Wieczorek, Plaintiffs-Appellants,
v.
TIME CONSTRUCTION, INC., Defendant-Appellee.
 No. 93-2218.
 United States Court of Appeals,
Sixth Circuit.
 Submitted Nov. 17, 1994.
Decided Jan. 9, 1995.
 
 David P. Wood (briefed), Rachelle G. Silberberg, Clark, Klein & Beaumont, Detroit, MI, for 8300 Newburgh Road Partnership.
 Susan Healy Zitterman, Jeremiah J. Kenney, Edward L. Ewald, Kitch, Drutchas, Wagner & Kenney, Detroit, MI, for John Geralt.
 David P. Wood, Kenneth M. Schneider, Dougherty, Schneider & Miller, Detroit, MI, for Leo M. Calhoun.
 David P. Wood, Detroit, MI, for Edio De Ciantis, Vincent Mancuso, Jr., Mitchell Wieczorek.
 Daniel F. Stella (briefed), Dykema & Gossett (Deceased), Krishna S. Dighe, Dykema & Gossett, Detroit, MI, for Time Const., Inc.
 Before: WELLFORD, RYAN, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 I.
 
 1
 8300 Newburgh Road Partnership ("NRP"), a Michigan-based land development venture comprised of Vincent Mancuso, the general manager, and a number of other Michigan residents, in May, 1986, entered into an agreement with Time Construction, Inc. ("Time") for Time to construct a condominium and apartment project in Westland, Michigan. The agreement provided that claims and disputes would be decided under construction industry arbitration rules of the American Arbitration Association.
 
 
 2
 Pasqual Carnacchi was the sole owner-stockholder of Time and had become a partner in NRP in 1985. Unfortunately, the entities involved had a "falling out" after Time had commenced and had performed substantial work on the project. In 1988, NRP removed Time from the project in the midst of a dispute about the amount of construction money owed Time over its partial performance of the contract. Time demanded arbitration in August of 1988, naming as respondents NRP and seven individual partners (including Mancuso, Leo Calhoun, Edio De Ciantis, John Geralt, and Mitchell Wieczorek, but excluding Carnacchi).
 
 
 3
 NRP responded by suing Time in Michigan state court, seeking an injunction to stay arbitration proceedings.[1] That court, denying NRP's petition, held that the arbitration agreement covered the disputes between the parties. The arbitration proceedings ensued with three arbitrators selected to be on the panel, purportedly with experience in the construction industry. After delays and the taking of discovery, the parties agreed to a hearing in March of 1991. On the eve of the scheduled hearing, counsel for NRP once again requested an adjournment, this time unsuccessfully.
 
 
 4
 During the hearing NRP, for the first time, demanded an accounting from Time and from Carnacchi with respect to the amounts paid Time by NRP. The arbitrators denied this demand as coming too late.[2] On Thursday morning, which was the fourth day of the hearing, NRP's counsel again requested an adjournment, claiming that a partner, De Ciantis, was unavailable to testify and in the hospital. The panel rejected this motion, holding that under the rules selected, the arbitration might proceed in the not fully explained absence of one of the partners.
 
 
 5
 Later Thursday afternoon, NRP renewed its motion for an adjournment. NRP's counsel promised that he would find out what De Ciantis suffered from, and would report to the panel on Friday morning. The panel agreed to adjourn the hearing at 3:00 p.m.
 
 
 6
 On Friday morning, however, NRP's counsel failed to state what De Ciantis' illness was, or how long the panel could expect to delay the hearing. NRP's counsel did present a photograph of De Ciantis in a hospital room, but failed to call Vincent Mancuso, who had visited with De Ciantis in the hospital, to testify about De Ciantis' condition. Nor did NRP's counsel present evidence from De Ciantis' doctor.[3] Once again, NRP moved for an adjournment.
 
 
 7
 The panel took the motion under advisement, and the parties spent the remainder of the morning disputing procedural rules and evidentiary submissions. After the lunch recess ended at 1:15 p.m., the panel denied NRP's motion for a postponement. The panel further instructed that if the case was not completed by 3:30 p.m. that day, the hearing would be continued until a later date. On at least two different occasions, the panel assured NRP's counsel that he would be allowed to bring in De Ciantis' testimony at a later date if he would make use of the time that remained (a little over two hours) on Friday.
 
 
 8
 NRP's counsel, however, fought the hearings at every turn. Although he indicated that he could go forward, he refused:
 
 
 9
 Arbitrator: Well, would you have any--would you be able to put any evidence on at all or testimony?
 
 
 10
 NRP's Counsel: Well I could put on somebody, yes, but I wouldn't.
 
 
 11
 NRP's counsel further threatened that "if you want me just to ask nonsensical questions, I will go ahead for an hour-and-a-half."
 
 
 12
 Exasperated with this delay and others that had occurred since the case was submitted to arbitration two and a half years earlier, the panel then asked for closing arguments, and informed the parties that they could also submit briefs after the hearing. Although De Ciantis was released from the hospital the day after the hearing concluded on Friday, NRP's counsel did not attempt to submit De Ciantis' testimony or affidavit until after the arbitrators had rendered their decision (some two months after the close of the hearing).
 
 
 13
 Not surprisingly (since NRP did not present a case), the arbitration panel awarded Time $1,474,644.33 in damages against the partnership and the named partners. This was the amount sought in accordance with Time's specific and detailed claim.
 
 
 14
 Thereafter, NRP filed another complaint in Michigan state court seeking to vacate the arbitration award and to compel an accounting. On March 18, 1991, however, prior to NRP's filing the complaint to vacate the arbitrator's award, Carnacchi and his wife had filed a voluntary bankruptcy petition. Realizing Carnacchi had filed for bankruptcy, NRP amended its complaint to drop Carnacchi as a defendant, seeking relief only from Time. Despite being removed as a party in the NRP action, the trustee for Carnacchi's bankrupt estate attempted to remove the state court action to the Carnacchi bankruptcy proceeding.[4]
 
 
 15
 NRP contested removal of the action to the Carnacchi bankruptcy proceeding and filed a motion to remand the matter to state court. Prior to a response, however, Time also filed a voluntary bankruptcy petition. The parties agreed to transfer the action to the Time bankruptcy proceeding, and NRP withdrew its motion to remand the matter to state court.
 
 
 16
 After these procedural maneuverings, the Time trustee moved for summary judgment. The bankruptcy court granted Time's motion and, in effect, affirmed the arbitration award in Time's favor. The bankruptcy judge noted that the parties might have applied to lift the bankruptcy automatic stay "in order to proceed exclusively in state court." NRP made no such application. Judge Graves found no merit in NRP's contention that the arbitrators erroneously refused to grant it an adjournment. Neither did he find merit in NRP's claim that the arbitrators erred in denying the eleventh-hour demand for an accounting, finding a "lack of preparation" on the part of NRP. The bankruptcy judge also denied as untimely NRP's claim, made for the first time, that the arbitrators "failed to apply the correct legal standard with regard to Partnership liability."
 
 
 17
 NRP and partners Geralt, Calhoun, De Ciantis, Mancuso and Wieczorek timely appealed the bankruptcy court's decision to the district court. Several months after filing its appeal to the district court, NRP moved to dismiss, or that the court abstain, based on alleged lack of subject matter jurisdiction. The basis for this "second-thought" action, taken over a year after the removal to bankruptcy court of NRP's state court complaint to set aside the arbitration award, was twofold: (1) that the Carnacchi trustee, a non-party, had removed the state case to bankruptcy court, and (2) the transfer of the removed case from the Carnacchi bankruptcy to the later Time bankruptcy carried with it the taint of the invalid Carnacchi removal.
 
 
 18
 Although the parties had agreed to remove the state court action to the Time bankruptcy proceedings, the district court was obligated to review the jurisdictional issue because subject matter jurisdiction is a prerequisite that cannot be waived by consent of the parties. The district court concluded, however, that the bankruptcy court had jurisdiction over the action because the arbitration award was a Time asset affecting its stock value and thus "directly affected the assets available in the Carnacchi bankruptcy proceeding." Furthermore, the district court concluded that "when the adversary proceeding to vacate the arbitration award was transferred to the Time bankruptcy on stipulation of [NRP] and the Trustee, and thereafter, subject matter jurisdiction existed."[5]
 
 
 19
 NRP and the individual partners appeal the district court's order denying their motion to remand for lack of subject matter jurisdiction. Alternatively, they ask that this court vacate the arbitration award because of the panel's refusal to postpone the hearing in light of De Ciantis' absence.
 
 II.
 
 20
 A. Whether the district court had subject matter jurisdiction over the state court appeal.
 
 
 21
 We need not review whether jurisdiction existed under the Carnacchi proceeding or at the time the state court appeal was removed because NRP did not renew its objection to the bankruptcy court's jurisdiction until after a decision was rendered. In Grubbs v. General Electric Credit Corp., 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972), the Supreme Court held that when a case is improperly removed but is tried to judgment on the merits without objection, a party waives his right to later raise the issue of lack of subject matter jurisdiction at the time of removal. As Judge Merritt stated in Morda v. Klein, 865 F.2d 782 (6th Cir.1989), the Grubbs rule "is eminently sensible, and conservative of judicial economy; it prevents a party who waits until after he loses in the court below to object to the jurisdictional defect from getting a second bite at the apple." Id. at 784.
 
 
 22
 Therefore, the issue before us on appeal is whether the bankruptcy court had subject matter jurisdiction over the arbitration award at the time judgment was entered. Resolution of the jurisdictional issue depends on this court's interpretation of 28 U.S.C. Sec. 1334, which provides:
 
 
 23
 Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
 
 28 U.S.C. Sec. 1334(b).[6] We have held that
 
 24
 [f]or the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between the second, third, and fourth categories (proceedings "arising under," "arising in," and "related to" a case under title 11). These references operate conjunctively to define the scope of jurisdiction. Therefore, for purposes of determining section 1334(b) jurisdiction, it is necessary only to determine whether a matter is at least "related to" the bankruptcy.
 
 
 25
 In re Wolverine Radio Co., 930 F.2d 1132, 1141 (6th Cir.1991) (citations omitted).
 
 
 26
 The test of "whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Robinson v. Michigan Consol. Gas Co., 918 F.2d 579, 583 (6th Cir.1990) (emphasis in original) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984)). The proceeding need not be against the debtor or the debtor's property as long as "the outcome could alter the debtor's rights, liabilities, options, or freedom of action...." Id.
 
 
 27
 Under our interpretation of "related to," the bankruptcy court in the Time bankruptcy proceeding clearly had jurisdiction over the state court action to vacate the arbitration award. The award was the largest asset of the bankrupt company, and the resolution of the action to vacate would clearly have an impact on the value of its bankruptcy estate. The same argument could also apply to the Carnacchi proceeding, if we were required to engage in such an analysis.[7] Therefore, we hold that the bankruptcy court properly exercised subject matter jurisdiction over the state court action.
 
 
 28
 B. Whether the arbitrator committed reversible error in not refusing to adjourn the hearing because of De Ciantis' absence?
 
 
 29
 Michigan Court Rules require the state court to vacate the Arbitrator's award if
 
 
 30
 (d) the arbitrator refused to postpone the hearing on a showing of sufficient cause, refused to hear evidence material to the controversy, or otherwise conducted the hearing to prejudice substantially a party's rights.
 
 
 31
 Mich. Court Rule 3.602(J)(1)(d). Courts, however, are not permitted to overturn freely the arbitrator's refusal to grant a continuance. The limited "abuse of discretion" standard of review that applies generally to an arbitrator's decision also applies to review of an arbitrator's refusal to postpone a hearing. Lee v. Dean Witter Reynolds, Inc., 594 So.2d 783, 785 (Fla.App.1992). The party seeking to vacate the arbitration award carries the burden of proving by "clear and convincing evidence" that the arbitrators abused their discretion. See Kemp v. Fisher, 89 Wis.2d 94, 277 N.W.2d 859, 862 (1979). See also Concord General Mutual Ins. Co. v. Northern Assurance Co., 603 A.2d 470, 472 (Maine 1992).
 
 
 32
 Prior to reviewing the merits of this case, it should be noted that the applicable rules allow the arbitration panel to conduct the hearing even in the absence of one of the parties. Rule 30 of the Construction Industry Rules provides:
 
 
 33
 Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or counsel who, after due notice, fails to be present or fails to obtain an adjournment.
 
 
 34
 It should also be noted that two other NRP partners who were also parties to the suit apparently voluntarily missed large portions of the hearing.
 
 
 35
 Based on the facts before the panel, it was not an abuse of discretion for the panel to refuse to postpone the hearing due to De Ciantis' illness. NRP did not present sufficient medical evidence to inform the panel of De Ciantis' condition or how long his condition would require the hearings to be postponed. It was NRP's burden to provide this information; the panel is not required "to ask" the party seeking a postponement to present evidence that is sufficient in determining whether a postponement is appropriate and the length of such a postponement.
 
 
 36
 Although De Ciantis was a partner of NRP, other partners were present at the hearing, including Mancuso, who was the managing partner. NRP's counsel, however, resisted the panel's efforts to use the time productively. Several witnesses, including Geralt and Mancuso, were listed as witnesses but NRP's counsel dismissed Geralt as "someone who doesn't know anything about anything." He also summarily stated that Mancuso's testimony built on De Ciantis' proposed testimony, but he did not give the court sufficient detail about what either party would testify. Although he insisted that De Ciantis must testify first, he had outlined a different strategy earlier. And despite the opportunity to do so, NRP's counsel did not attempt to present De Ciantis' testimony until after the arbitrators had rendered their decision some two months after the original hearing.
 
 
 37
 It was not an abuse of the arbitrators' discretion to encourage NRP to use the remainder of the day productively. As the record indicates, the arbitration panel had been generous in granting NRP continuances and allowing early adjournments throughout the two and a half years the suit had been in arbitration. NRP had expended its goodwill by numerous delays throughout the arbitration proceeding and it should not be able to create reversible error by its own failure to prosecute its case.
 
 III.
 
 38
 Accordingly, we AFFIRM the district court's exercise of jurisdiction over this case and its decision to AFFIRM the arbitrators' decision.
 
 
 
 [1]
 Time filed a counterclaim asserting NRP's breach of contract and claiming a substantial amount to be due Time
 
 
 [2]
 NRP's accountant conceded that he had already been furnished checks, receipts, and other documentation by Carnacchi
 
 
 [3]
 On appeal, NRP argues that "[a]n offer was made to attempt to reach De Ciantis' doctor so that the arbitrators could talk to the doctor, but no one at the hearing--neither the arbitrators nor counsel for Time--raised any question as to the legitimacy of De Ciantis' illness." This statement, however, is somewhat misleading. NRP's counsel (despite being given an early adjournment on Thursday so that he could find out more about De Ciantis' illness) stated that he had been unable to talk with any of De Ciantis' doctors. He then offered to continue to try to reach the doctors, but it is likely the panel felt this attempt would also be fruitless
 
 
 [4]
 The trustee claimed that Carnacchi was the "alter ego" of Time
 
 
 [5]
 The district court added that "at a minimum [it was] 'related to' the Time bankruptcy proceeding ... and met the 'conceivable impact' test." (emphasis in original). The district court found no equitable grounds to remand the case under 28 U.S.C. Sec. 1452(b). The district court also determined that "neither mandatory nor discretionary abstention is appropriate." (Abstention was never argued before the bankruptcy court, but was raised for the first time on appeal to the district court.)
 
 
 [6]
 The district court has power to transfer a case to the bankruptcy court. Thus, if the district court had jurisdiction under section 1334, then the bankruptcy court would as well
 
 
 [7]
 Carnacchi was the sole shareholder of Time, whose major corporate asset was the arbitration award. Resolution of the state court action would have a substantial effect on the monetary value of Time's shares, and thus would have a substantial effect on the value of Carnacchi's bankruptcy estate