SCHOOL DISTRICT OF SPOONER, Petitioner-Respondent-Petitioner,

v.

NORTHWEST UNITED EDUCATORS, Respondent-Appellant,

WISCONSIN EMPLOYMENT RELATIONS COMMISSION, Intervenor-Respondent and Co-Appellant.

Supreme Court

*No. 84–1625. Argued January 7, 1987.—Decided March 9, 1987.*

(Also reported in 401 N.W.2d 578.)

263

For the petitioner-respondent-petitioner there was a brief and oral argument by *Thomas J. Bitney*, *Woodrow Wilson Bitney* and *Bitney Law Firm, Ltd.*, Spooner.

For the intervenor-respondent and co-appellant the cause was argued by *John D. Niemisto*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

For the respondent-appellant there was a brief by *Priscilla Ruth MacDougall* and *Wisconsin Education Association Council*, Madison, and oral argument by *Priscilla Ruth MacDougall*.

HEFFERNAN, CHIEF JUSTICE. This is a review of an unpublished opinion dated January 21, 1986, which reversed a decision of the circuit court for Washburn county vacating an arbitrator's award. We reverse the decision of the court of appeals and remand for further arbitration.

The arbitrator had directed that petitioner, School District of Spooner (hereinafter "School District") reinstate with back pay John Patrick, an industrial arts teacher whom it had discharged, on the

grounds that the School District had lacked just cause for Patrick's dismissal. The circuit court for Washburn county vacated the arbitrator's award on the merits because it found the arbitrator's failure to disclose that he had once been employed by the Wisconsin Education Association Council ("WEAC") to constitute evident partiality, and because it found that the arbitrator exceeded his authority under the collective bargaining agreement between the parties. The court of appeals reversed the circuit court's decision on both issues and reinstated the arbitrator's award. Because we find that the arbitrator's failure to disclose his prior employment with WEAC constitutes evident partiality, we reverse the decision of the court of appeals and remand the case for re-arbitration. We thus do not reach the merits of the arbitrator's award or the question of whether the award exceeded the authority granted to the arbitrator under the collective bargaining agreement.

John Patrick was an industrial arts teacher in the Spooner School District from 1965 until his dismissal on June 1, 1981. On April 9 of that year, he went drinking with some friends, became intoxicated, and, later that night, broke into a locked truck. He stole several items from the truck. The theft was reported, and the missing items were found on Patrick's property the next day. Patrick told authorities that he had no recollection of the incident. However, he was arrested and charged with theft and intentionally entering a locked vehicle with intent to steal. He was also suspended from his teaching job. Patrick subsequently entered into a plea agreement whereby he pleaded no contest to the charge of entering a locked vehicle in exchange for dismissal of the theft charge.

Between the time Patrick was charged and the time he entered into the plea agreement, the School District held a hearing in order to determine the facts surrounding the incident. Patrick did not participate because the criminal charges had not yet been resolved. The School District decided to continue the suspension.

Four days after Patrick entered into the plea agreement, the School District held a meeting at which it decided to dismiss him. Patrick was allowed to be present, but was limited to speaking about the alcohol and psychiatrist counselling he had received since the incident. He was not permitted to present evidence or witnesses, having been deemed by the School District to have forfeited his opportunity to do so because he had not participated in the previous hearing.

After the School District decided to discharge Patrick, a grievance was filed on his behalf. The matter was submitted to arbitration, pursuant to the collective bargaining agreement between the School District and the Spooner Education Association. The Wisconsin Employment Relations Commission ("WERC") assigned arbitrator William C. Houlihan to the dispute. A hearing was held on February 12, 1982, after which the parties filed briefs. The School District was represented by its counsel, while the teacher's union was represented by Priscilla Ruth MacDougall, a WEAC staff attorney.

The arbitrator directed that Patrick be reinstated with back pay. He concluded that the School District lacked just cause to dismiss Patrick. The School District then commenced this action in Washburn county circuit court. It argued that the award should be vacated under sec. 788.10(1), Stats., on the ground

of evident partiality and because the arbitrator had exceeded the powers granted to him under the collective bargaining agreement.[1] The School District alleged that arbitrator Houlihan had worked for WEAC prior to his employment with the WERC, had worked for Priscilla Ruth MacDougall while at WEAC, and had failed to disclose these facts to the School District before hearing the dispute. It also alleged that the WERC had failed to disclose arbitrator Houlihan's past employment.

Arbitrator Houlihan admitted, in interrogatories, that he had worked for WEAC as a part-time law clerk while he was in law school. He was employed there for approximately eighteen months. During that time, however, he was not assigned to work for Priscilla Ruth MacDougall; he only prepared one internal memorandum for her during the entire course of his employment with WEAC. Apparently, he also attended a party that MacDougall gave for all WEAC law clerks and their spouses. Arbitrator Houlihan also

---

[1]Sec. 788.10(1), Stats., provides:

788.10 **Vacation of award, rehearing by arbitrators.** (1) In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:

(a) Where the award was procured by corruption, fraud or undue means;

(b) Where there was evident partiality or corruption on the part of the arbitrators, or either of them;

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy: or of any other misbehavior by which the rights of any party have been prejudiced;

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

stated that he had not been involved in any discharge cases while at WEAC. Finally, he acknowledged that he could not recall having advised the School District or its counsel that he had been employed by WEAC before becoming an arbitrator.

The circuit court agreed that arbitrator Houlihan should have disclosed his prior employment with WEAC before arbitrating the dispute. Because it found that a reasonable person, as a party to the arbitration, upon being advised of Houlihan's prior employment at WEAC and of the fact that he had prepared a memo for Priscilla Ruth MacDougall while employed there, would have sufficient doubts as to Houlihan's impartiality that he or she would investigate further, the circuit court found evident partiality and vacated the award.[2]

On review, the court of appeals reversed the circuit court's finding of evident partiality, concluding that there was no evidence that would cause a reasonable person to doubt arbitrator Houlihan's impartiality. It found that Houlihan's "indirect professional contact and very slight social contact with MacDougall four years prior to this arbitrated dispute" did not constitute evident partiality. The court of appeals also affirmed the award on its merits, and remanded the case with directions that an order be entered confirming the award.

---

[2]The circuit court also vacated the award on its merits, finding that arbitrator Houlihan exceeded the authority granted to him under the collective bargaining agreement. As noted above, we do not reach the merits of the arbitrator's decision because we remand the case for further arbitration, based on our finding of evident partiality.

In reviewing the decision of the court of appeals that arbitrator Houlihan's past employment with WEAC does not constitute evident partiality, this court is presented with a question of law. Whether facts fulfill a particular legal standard is a question of law. *Nottelson v. ILHR Department*, 94 Wis. 2d 106, 116, 287 N.W.2d 763 (1980). This court decides questions of law independently, without deference to the decisions of the trial court or court of appeals. *Ball v. District No. 4, Area Board*, 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984).

The test for evident partiality was laid out by this court in *Richco Structures v. Parkside Village, Inc.*, 82 Wis. 2d 547, 263 N.W.2d 204 (1978). An arbitrator's award must be vacated on the ground of evident partiality if "the reasonable person, as a party to the arbitration proceeding, upon being advised of the undisclosed matters, would have such doubts regarding the prospective arbitrator's impartiality that he or she would investigate further, would demand that the arbitration be conducted on terms which would provide checks on the arbitrator's exercise of discretion, or would take other protective measures to assure an impartial arbitration and award." 82 Wis. 2d at 562.

The *Richco Structures* court discussed the types of disclosures required to be made by an arbitrator. Rejecting the notion that the concept of "evident partiality" was restricted to cases where there is proof that "an arbitrator has an interest in the outcome of the proceeding" or where "a relationship exists between the arbitrator and a party or a party's representatives which is so substantial that the arbitrator's interest in the outcome may be inferred," *Richco Structures* construes "evident partiality" as a much

broader concept. 82 Wis. 2d at 557–59. According to *Richco Structures*, an arbitrator must disclose:

1.  Relationships or transactions with the parties or their representatives.

2.  Facts which might indicate to a reasonable person that the arbitrator may have an interest in the outcome of the arbitration.

3.  Facts which may reasonably support an inference, or the appearance of the existence of bias, prejudice, partiality, or the absence of impartiality. *See*, 82 Wis. 2d at 558.

Further, an arbitrator's failure to disclose any of the above is sufficient to constitute evident partiality. 82 Wis. 2d at 558–59.

The reasons for requiring disclosure are obvious. The parties to an arbitration proceeding have an expectation that their dispute will be heard and resolved by an impartial, disinterested arbitrator. Disclosure at the outset, before any hearings begin, allows the parties to determine for themselves whether they believe that the arbitrator will be able to decide their dispute impartially. The very limited scope of judicial review of arbitrators' decisions makes selection of an impartial arbitrator particularly important. Also, disclosure at the outset promotes efficiency. Without a doubt, many of the facts disclosed by arbitrators before the hearing will, either immediately or after brief investigation, be viewed as harmless by the parties and the arbitration will proceed. Facts that are not disclosed, but come to a party's attention during the proceedings or after an award is made, however, may raise more suspicion than they would had they been dealt with openly, and may result in time-consuming review by the judicial system as well

as re-arbitration. *See, Richco Structures*, 82 Wis. 2d at 558–61.

The reasonable person, upon being informed that arbitrator Houlihan had written a memo for the teacher's union's counsel four years earlier and attended a party that she gave for law clerks and their spouses, might well conclude that there was not sufficient doubt as to arbitrator Houlihan's impartiality to impel further investigation. We do not agree, however, with the court of appeals' position that arbitrator Houlihan's prior employment with WEAC does not constitute evident partiality.

A reasonable person, as a party to an arbitration proceeding, upon being advised that the arbitrator selected had been employed by the entity that supplied the other party's counsel, might well have such doubts regarding the arbitrator's impartiality that he or she would investigate further, demand checks on the arbitrator's exercise of discretion, or would take other protective measures to insure an impartial award. A prospective arbitator must therefore disclose, prior to hearing the dispute, all past employment with a party or with an entity that has supplied counsel for a party. Failure to disclose such past employment constitutes evident partiality.

This is not to say that an arbitrator's past employment with a party demonstrates that the arbitrator is partial. We emphasize that the phrase, "evidence partiality," should be broadly construed to mean "evidence of possible partiality," rather than narrowly construed to mean "partiality is self-evident." Past employment with a party is only evidence of possible partiality; once the other party has ascertained the time, nature, and duration of the past employment, it may well conclude that the arbitrator

is able to decide the dispute impartially. Disclosure is necessary, however, in order to afford the other party the opportunity to make the relevant inquires and decide for itself after investigation whether the arbitrator selected is impartial and disinterested. Thus, a finding of evident partiality may be based on any undisclosed facts which are evidence of impartiality; actual impartiality or facts from which partiality is a foregone conclusion are not required.

We hold that arbitrators must disclose, prior to hearing a dispute, any past employment with a party to the dispute or, as in this case, with an entity that supplies counsel for a party to the dispute. In so modifying the requirements of *Richco Structures* regarding evident partiality and an arbitrator's duty of disclosure, this court expresses no opinion as to whose duty it is to make the required disclosures when the arbitrator is selected by a governmental agency rather than by the parties. Thus, it is not necessary for this court to decide whether arbitrator Houlihan or the WERC should have disclosed the arbitrator's past employment with WEAC. What matters is that such a disclosure is required to be made. Who makes the disclosure can be determined as a matter of internal agency procedure where a governmental agency is involved.

There is clear and convincing evidence that arbitrator Houlihan was previously employed by WEAC, which supplied counsel for the teacher's union in this case, and failed to disclose this fact before hearing the dispute. This failure to disclose constitutes evident partiality. We therefore reverse the court of appeals' decision confirming the arbitrator's

award, and vacate the award. Because re-arbitration,[3] not vacation on the merits, is the remedy for evident partiality, we remand the case for further arbitration.

*By the Court.*—Decision of the Court of Appeals reversed and cause remanded.

SHIRLEY S. ABRAHAMSON, J. (*dissenting*). Dutifully applying *Richco Structures v. Parkside Village, Inc.*, 82 Wis. 2d 547, 263 N.W.2d 204 (1978), the court of appeals affirmed the arbitrator's award. In contrast, the majority tosses out *Richco Structures*, announces a new interpretation of the statute, and vacates the award that so outraged the sensibilities of the trial court. I dissent.

First, the *Richco Structures* full disclosure—harmless error test used to vacate an award on the basis of "evident partiality," sec. 788.10(1)(b), Stats. 1985–86, is a well-accepted test and it works. Second, the arbitrator made full disclosure of his past employment history to the Wisconsin Employment Relations Commission, which the parties had empowered to appoint the arbitrator, and the Commission's decision to appoint this arbitrator was reasonable.

## I.

Euphemistically claiming that it is "modifying the requirements of *Richco Structures*" (majority

---

[3]Because no provision of the collective bargaining agreement requires the arbitrator's award to be made within a certain time period, re-arbitration is not barred by sec. 788.10(2), Stats. Sec. 788.10(2) provides:

"(2) Where an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators."

opinion at page 10), the majority overrules *Richco Structures* and changes this court's interpretation of sec. 788.10(1)(b). It is elementary that this court will generally "stand by things decided." Stare decisis includes, of course, room for the growth that is inherent in the common law. Although this case involves statutory interpretation rather than common law adjudication, growth occurs in statutory interpretation as well. This court, however, does not generally overrule its interpretation of a statute. The canon of interpretation usually applied is that the legislature has accepted the court's interpretation when it does not amend a statute interpreted by the court. On occasion, the court will overrule its prior interpretation of a statute, when it concludes that its original interpretation was erroneous. See *State v. Smith*, 113 Wis. 2d 497, 335 N.W.2d 376 (1983). The decision to depart from precedent—whether in a common law or statutory adjudication—is not a casual one; any such decision must be open and must be explained. This insures that the court is responding to a felt need and not to caprice. The majority in this case overrules this court's interpretation of sec. 788.10(1)(b) without explaining the necessity for its departure from its earlier interpretation of the statute.

The majority has adopted a new interpretation of sec. 788.10(1)(b): Any time an arbitrator fails to disclose past employment with a party or an entity that supplies counsel to a party, there is evident partiality and the award must be vacated.

The majority equates the words "evidence of possible partiality" with the statutory phrase "evident partiality," thereby amending the statutory test with a play on words. The majority is saying that if there is any evidence, that is, any undisclosed fact, that tends

to make the existence of partiality possible, then there is "evidence of possible partiality," which equals "evident partiality." The majority then concludes that since an undisclosed prior employment relationship is always evidence of possible partiality, an undisclosed prior employment relation is evident partiality per se. No matter how remote in time the employment was, how limited the length of employment, or how removed the nature of the past employment from the circumstances in the case, the same inflexible per se rule requires vacating the arbitration award for the arbitrator's failure to disclose the prior employment.

This per se rule is inappropriate. It has no foundation in sec. 788.10(1)(b), Stats. 1985–86, or in principles of jurisprudence.

The *Richco Structures* test is similar to that used in the federal system and in other states that have statutes comparable to sec. 788.10(1)(b). The *Richco* court admonished arbitrators to make full disclosure at the outset of arbitration of relationships and transactions they have had with the parties or representatives of the parties to the arbitration. Cognizant of the frailties of memory and differences of opinion as to what information should be disclosed, the *Richco Structures* court applied a reasonable person test to determine evident partiality if the arbitrator failed to make disclosure. The court said that the statutory phrase "evident partiality ... on the part of the arbitrators" requires that an award must be vacated if a reasonable person knowing the previously undisclosed information would have had "such doubts" regarding the arbitrator's impartiality that she would have taken action on the information to ensure the arbitrator's impartiality. In other words, a reasonable person would conclude it "evident," that is, clear,

plain, and apparent from the undisclosed information, that partiality is so likely that action was required.

In *Richco Structures* this court interpreted sec. 788.10(1)(b) to achieve the legislative objective of striking "the proper balance between ensuring finality of arbitration awards and ensuring justice and fairness (and the appearance of justice and fairness)." 82 Wis. 2d at 560. The majority's willingness in this case to vacate an arbitrator's award given any evidence of any undisclosed past employment with an entity that supplies counsel to a party upsets the balance struck by the legislature, significantly undermining finality without appreciably increasing the appearance or reality of justice and fairness. The standard adopted by the majority in this case weakens the arbitration process endorsed by the legislature, making awards much easier to topple on appeal and making the arbitration process more protracted and more expensive.

The majority's adoption of a per se rule not only has no basis in sec. 788.10(1)(b) but also contravenes basic jurisprudential principles. The court ordinarily applies a harmless error test in civil and criminal cases. The *Richco Structures* test is a type of harmless error test.

The court rarely applies a per se rule to overturn a decision maker; a reversal for an infraction that does not affect the reliability of the result or basic principles of justice is too harsh a penalty and too wasteful of resources. Thus in *State v. Walberg*, 109 Wis. 2d 96, 325 N.W.2d 687 (1982), even where the court concluded that the circuit judge had the appearance of partiality and that his presiding in the case was constitutional error and improper judicial conduct, the court did not reverse the conviction. The

court affirmed the conviction because the court concluded that the judge's partiality did not affect the result in the case.

I conclude that the *Richco Structures* test, not a per se test, comports with the language and purpose of sec. 788.10(1)(b) and the jurisprudential principle of harmless error.

Using the *Richco Structures* interpretation of sec. 788.10(1)(b), the court ought to affirm the award. While a law student, the arbitrator worked as a part-time law clerk with the entity supplying counsel to one of the parties on matters unrelated to any issues or parties involved in this case. The arbitrator's undisclosed employment history was remote in time, casual, superficial, isolated and inconsequential in terms of the present arbitration dispute. The arbitrator has no financial interest in the dispute, the parties or their counsel and has no current or recent relationship with the parties or their counsel. The arbitrator is not a one-time or part-time arbitrator. He has been employed for several years as a full-time professional arbitrator with the Wisconsin Employment Relations Commission. Arbitration is his career. He is trained in the necessity of impartiality.

The arbitrator's past employment record in this case does not rise to the level of signifying partiality or the appearance of partiality. A reasonable person would not have had such doubts about the arbitrator's impartiality that she would have taken action on the information. The parties have not cited any case, and I can find none, in which any award has been vacated when the arbitrator had the kind of insignificant relation with an entity representing a party as the arbitrator did in this case. See Domke, *Commercial Arbitration* secs. 21.02, 21.03 (rev. ed.). Furthermore,

the School Board does not claim and did not prove that the arbitrator was partial or that his undisclosed relationship affected the award.

## II.

In this case, I conclude that any disclosure required by *Richco Structures* must be made to the Wisconsin Employment Relations Commission, the parties' designate, not to the parties themselves. In this case the collective bargaining agreement provided that the Wisconsin Employment Relations Commission (WERC) shall furnish an impartial arbitrator. Section 111.70(4)(c)2, (cm)4, Stats. 1985–86. Under the terms of the collective bargaining agreement neither party has the right to affect WERC's selection.

Even under the majority's new standard requiring disclosure of past employment with a party or an entity supplying counsel to a party, this court should not vacate the award because the arbitrator in this case had already disclosed his past employment history to WERC. The circuit court found that WERC was aware of the arbitrator's clerking experience both at the time WERC hired him and when it appointed him as arbitrator.

WERC's brief states that WERC acknowledges its duty to consider prior employment and social and business relationships and to advise the parties about the arbitrator's background if there is any reasonable doubt concerning the arbitrator's impartiality. Apparently satisfied that the arbitrator's part-time law clerk experience did not render him partial and did not give rise to any reasonable doubt concerning impartiality, WERC appointed him arbitrator and did not disclose the arbitrator's past employment record.

Full disclosure would have been preferable but in vacating an award this court is reviewing WERC's decision not to disclose the arbitrator's past employment. This court ought to determine whether WERC abused its discretion, that is, whether it did not reasonably exercise its statutory duty to appoint an impartial arbitrator. If WERC acted reasonably in appointing the arbitrator, the award should not be vacated unless the party seeking to upset the award proves that the arbitrator was partial. In deciding the issue of reasonableness, this court should give some deference to the agency's expertise in labor and arbitration matters and thus in determining what in the arbitrator's history should be disclosed to the parties.

I conclude that WERC acted reasonably. As I have explained, any interest or bias based on the arbitrator's past employment record is remote, uncertain and speculative. The parties got what they bargained for— the appointment of an arbitrator who WERC reasonably believed was impartial and who the parties have not proved was partial.

### III.

One might quarrel with the arbitrator's concept of mercy in this case, as the trial court did when it expressed outrage at the idea that a teacher's criminal behavior was not just cause for that teacher's dismissal. But the court's task is not to judge the merits of an arbitrator's award.

I see no reason to change our interpretation of the statutory standard of evident partiality in this case, and the court has supplied none. The interpretation of sec. 788.10(1)(b) which the majority now adopts makes

it easier for parties to attack arbitration awards in future cases. This result is contrary to the objective of the arbitration statutes. For this reason, I think the statutory interpretation set forth in this case is ultimately an unstable one from which the court will retreat.

For the reasons set forth, I dissent.