James and Michele DeBaker, Ray and Donna Mroczynski and Ken and Carol Neuser, Claimants-Respondents,

v.

Pravin Shah and American Capital Financial Services, Inc., Respondents-Appellants.†

Court of Appeals

*No. 94–0255. Submitted on briefs August 1, 1994.—Decided August 30, 1994.*

(Also reported in 522 N.W.2d 268.)

†Petition to review granted.

On behalf of the respondents-appellants, the cause was submitted on the briefs of *Michael H. Schaalman, Ronnie M. Flannery, Mark A. Sanders* of *Quarles & Brady* of Milwaukee.

On behalf of the claimants-respondents, the cause was submitted on the brief of *James A. Bolt* of New Berlin.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.    American Capital Financial Services, Inc., and Pravin Shah (American Capital) appeal an order to vacate an arbitration award and order for re-arbitration that dismissed an action filed by James and Michele DeBaker, Ray and Donna Mroczynski, and Ken and Carol Neuser (DeBakers). The trial court vacatur was based on the premise that one of the arbitrators failed to disclose pertinent information regarding campaign contributions made to him by attorneys with the firm representing American Capital and that this failure to disclose constitutes "evident partiality" under § 788.10(1)(b), STATS.[1] American Capital requests this court to reverse the trial court's order

---

[1] Section 788.10, STATS., reads in its entirety:

**788.10 Vacation of award, rehearing by arbitrators.**
    (1)   In either of the following cases *the court* in and for the county wherein the award was made *must make an order vacating the award* upon the application of any party to the arbitration:

vacating the arbitration award because it alleges the arbitrator made all disclosures required by state and federal law. American Capital also asserts that an evidentiary hearing is necessary to discern whether the DeBakers knew of the congressional campaign and these contributions and, if so, the DeBakers should be estopped from asserting the nondisclosure as a basis for vacating the arbitration decision. We conclude that the campaign contributions made to the arbitrator and his nondisclosure of the contributions was evident partiality on the part of the arbitrator. We also conclude that the evidentiary hearing is waived because it is requested for the first time on appeal. Thus, we affirm the trial court's order vacating the arbitration award.

In March 1991, the DeBakers filed an action against American Capital alleging violations of various securities laws and misrepresentations. Specifically, they allege American Capital failed to reveal to the DeBakers the risk involved in a limited partnership interest and mutual funds recommended for investment. American Capital responded by filing a motion to compel arbitration pursuant to a binding contractual

---

(a) Where the award was procured by corruption, fraud or undue means;

(b) *Where there was evident partiality* or corruption *on the part of the arbitrators*, or either of them;

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

(2) Where an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators (Emphasis added).

agreement, which required that any dispute be conducted under the prescribed rules of the National Association of Securities Dealers, Inc. (NASD). In September 1991, the trial court stayed the action pending arbitration.

After the DeBakers filed a complaint with the NASD alleging the above violations, the NASD appointed a three-member panel to resolve the dispute. Prior to the hearing, the parties were provided with "Arbitrator Disclosure" forms. Each arbitrator was to disclose information on education, employment and possible conflicts, pursuant to NASD guidelines set forth in § 21 of the Code of Arbitration Procedure (the uniform code of arbitration).[2] The chairman of the arbitration panel, Frederick P. Kessler, disclosed his self-employment as an arbitrator, his employment as a Milwaukee County circuit court judge and his school experience at the University of Wisconsin under the "Employment/Education History" section of the form. Under "Disclosure/Conflict Information," Kessler listed "accounts" as Robert W. Baird & Co. and Dain Bosworth Incorporated, "clients" as Robert W. Baird & Co. and "family" as Thompson McKinnon Securities, Inc.

Under NASD uniform code § 23(a), arbitrators are also required to disclose "any circumstances which

---

[2] Section 21 of the Code of Arbitration Procedure, National Association of Securities Dealers, Inc. (Dec. 1993), states in part:

**Notice of Selection of Arbitrators**
    **Sec. 21.** The Director of Arbitration shall inform the parties of the arbitrators' names and employment histories for the past ten (10) years, as well as information disclosed pursuant to Section 23, at least eight (8) business days prior to the date fixed for the first hearing session. A party may make further inquiry of the Director of Arbitration concerning an arbitrator's background.

might preclude such arbitrator from rendering an objective and impartial determination." Section 23(c) asserts:

> The obligation to disclose interests, relationships, or circumstances that might preclude an arbitrator from rendering an objective and impartial determination described in subsection (a) hereof is a continuing duty that requires a person who accepts appointment as an arbitrator to disclose, at any stage of the arbitration, any such interests, relationships, or circumstances that arise, or are recalled or discovered.

None of the arbitrators made disclosures under this provision.

Prior to the arbitration, Kessler had campaigned for political office, including twice for Milwaukee County circuit judge and three times for United States Representative to Congress. In 1992, while this case was pending, Kessler conducted a congressional primary campaign and received political campaign contributions from five attorneys of the Quarles & Brady law firm,[3] which represents American Capital in this action. None of the attorneys involved in this arbitration made these contributions. The contributions totaled $1,475. Kessler did not disclose these campaign contributions from attorneys of the Quarles & Brady firm or the congressional campaign to the parties either on the "Arbitrator Disclosure" form or otherwise.

The arbitration panel conducted the hearing on April 20-22, 1993. American Capital successfully

---

[3] These attorneys identified themselves as members of the Quarles & Brady law firm as reflected on Federal Election Commission Selected List of Receipts and Expenditures.

moved for a directed verdict, and the arbitration panel dismissed the DeBakers' claims. In September 1993, the DeBakers filed a motion to vacate the arbitration decision. The basis of the motion was that Kessler did not disclose the contributions made by the Quarles & Brady attorneys, thereby constituting evident partiality. Judge Peter Naze granted the DeBakers' motion and vacated the arbitration order in December 1993. American Capital appeals this order.

The first issue we address is whether we apply federal or state law. The DeBakers allege that their trial court motion to vacate was predicated on federal law, specifically 9 U.S.C. § 10(b), the Federal Arbitration Act (FAA), which regulates the vacation of arbitration awards. However, the trial court premised its decision on ch. 788, STATS., of the Wisconsin statutes along with Wisconsin case law. The DeBakers surmise that by enacting the FAA, Congress demonstrated an intent to preempt any state attempt to regulate arbitration. This assertion is erroneous. In *Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468 (1989), the United States Supreme Court articulates:

> The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration. But even when Congress has not completely displaced state regulation in an area, state law may nonetheless be pre-empted to the extent that it actually conflicts with federal law . . . .

*Id.* at 477 (citation omitted). Hence, the FAA does not expressly preempt ch. 788. The next step is to determine whether the state law at issue conflicts with the federal law such that it " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Id.* (quoting *Hines v. Davido-*

258

*witz*, 312 U.S. 52, 67 (1941)). *Volt* explains the purpose of the FAA is to assure that agreements to arbitrate are enforced in the courts and treated like other contracts. *Id.* at 478. In this instance there is no conflict between the federal and state laws, as they mirror each other. The state statute does not obstruct the congressional purposes and objectives. Consequently, we will analyze these facts in relation to Wisconsin law. Because § 788.10 is nearly identical to the FAA section on grounds for vacating arbitration awards, federal cases construing evident partiality are persuasive. *See Diversified Mgmt. Servs., Inc. v. Slotten*, 119 Wis. 2d 441, 446, 351 N.W.2d 176, 179 (Ct. App. 1984).

The question of Kessler's nondisclosure of the campaign contributions constituting "evident partiality" under § 788.10, STATS., is one of law. The issue in this case involves application of a statute to undisputed facts, a question of law that this court reviews independently of the trial court's conclusions. *Ball v. District No. 4, Area Bd.*, 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

The state's policy is to encourage arbitration as an alternative to litigation; consequently arbitration awards are presumed valid and will only be set aside upon showing that a statutory ground for vacatur exists. *Richco Structures v. Parkside Village, Inc.*, 82 Wis. 2d 547, 553, 263 N.W.2d 204, 208 (1978). The court's role is supervisory, thus there is not only a presumption that the arbitration award is valid, but that it is subject to limited judicial review. *Nicolet High Sch. Dist. v. Nicolet Educ. Ass'n*, 118 Wis. 2d 707, 712-13, 348 N.W.2d 175, 178 (1984). Furthermore, the invalidity of the award must be supported by clear and

convincing evidence. *Richco*, 82 Wis. 2d at 553, 263 N.W.2d at 209.

■■■

Under § 788.10(1)(b), STATS., a court must vacate an arbitration award if "there was evident partiality or corruption on the part of the arbitrators, or either of them." In *Richco* and *School Dist. of Spooner v. Northwest United Educators,* 136 Wis. 2d 263, 401 N.W.2d 578 (1987), the supreme court interpreted § 788.10(1)(b) and the term "evident partiality." In *Richco,* the supreme court adopted a rule requiring the arbitrator to disclose at the outset of the arbitration proceedings all relationships or transactions with the parties or their representatives. *Richco*, 82 Wis. 2d at 558, 263 N.W.2d at 211. The arbitrator must also disclose any facts that might cause a reasonable person to be concerned that the arbitrator might have an interest in the outcome. *Id.* Additionally, the arbitrator must disclose relationships or transactions that reasonably support the appearance of partiality or bias. *Id.* The burden is on the arbitrator to search his or her memory and records and to make full disclosure, erring on the side of more rather than less disclosure. *Id.* at 561, 263 N.W.2d at 212. The supreme court also made it clear that we must construe "evident partiality" to include proof of an arbitrator's failure to disclose these facts and relationships. *Id.* at 559, 263 N.W.2d at 211.

When there is nondisclosure at the outset of arbitration, the supreme court articulated the test as follows:

> [T]he test for vacatur on the ground of evident partiality is whether the reasonable person, as a party to the arbitration proceeding, *upon being advised of the undisclosed matters,* would have such doubts

260

regarding the prospective arbitrator's impartiality that he or she would investigate further, would demand that the arbitration be conducted on terms which would provide checks on the arbitrator's exercise of discretion, or would take other protective measures to assure an impartial arbitration and award.

*Id.* at 562, 263 N.W.2d at 213 (emphasis added).

*Spooner* further interprets § 788.10(1)(b), STATS., by emphasizing that "a finding of evident partiality may be based on any undisclosed facts which are evidence of impartiality; actual impartiality or facts from which partiality is a foregone conclusion are not required." *Spooner*, 136 Wis. 2d at 272, 401 N.W.2d at 582. *Spooner* also modifies *Richco* by requiring arbitrators to disclose any past employment with a party to the dispute. *Spooner,* 136 Wis. 2d at 272, 401 N.W.2d at 582.

American Capital alleges that Kessler's failure to disclose campaign contributions by uninvolved Quarles & Brady attorneys does not constitute evident partiality. We disagree. Applying the *Richco* test for vacatur, the following question arises: Would a reasonable person, upon being advised of these congressional campaign contributions, have such doubts regarding Kessler's impartiality that he or she would (1) investigate further, (2) demand that the arbitration hearing be conducted on terms that would provide checks on Kessler's discretion, or (3) take other protective measures to assure an impartial arbitration and award? *See id.* at 562, 263 N.W.2d at 213. Our answer is yes. A reasonable person, once informed of the campaign contributions by opposing counsel's firm, would make further investigation and possibly take protective measures such as exercising a peremptory challenge or

261

challenge for cause as set forth by the NASD uniform code of arbitration.

Additionally, Kessler's actual bias is not required to show evident partiality, nor is it suggested in this case. The inquiry is not whether Kessler acted in good faith or whether his actions were actually prejudicial or biased, but whether his actions had the appearance of evident partiality. The recent congressional campaign contributions from attorneys of the opposing law firm reasonably support the appearance of partiality or bias. As *Richco* sets forth:

> The neutral arbitrator must also disclose any facts which might indicate to a reasonable person that the arbitrator has or might reasonably be supposed to have an interest in the outcome of the arbitration, or which may reasonably support an inference of or the appearance of the existence of bias, prejudice, partiality, or the absence of impartiality.

*Id.* at 558, 263 N.W.2d at 211 (footnote omitted).

The NASD uniform code § 23(c) clearly delineates the arbitrator's obligation to disclose interests as "a continuing duty that requires a person who accepts appointment as an arbitrator to disclose, at any stage of the arbitration, any such interests, relationships, or circumstances that arise, or are recalled or discovered." Kessler's congressional campaign was contemporaneous with this action. If Kessler had disclosed his congressional campaign along with the relevant contributions of the Quarles & Brady attorneys at any time before the arbitration hearing, the DeBakers would have had the opportunity to determine the significance of such a disclosure and act accordingly. The burden was on Kessler to disclose the information, not the DeBakers to research Kessler's electoral history. We

are not requiring that Kessler had to disclose all campaign contributions of every public office he held, but only those contributions relevant to this arbitration.

There is clear and convincing evidence that five Quarles & Brady attorneys donated to Kessler's congressional campaign as evidenced by the Federal Election Commission Selected List of Receipts and Expenditures. These contributions and failure to disclose them constitute evident partiality. We therefore affirm the trial court's order vacating the arbitration award and ordering re-arbitration.

American Capital's second argument is that the trial court erred by not providing for an evidentiary hearing to inquire into the DeBakers' actual knowledge of the campaign and contributions. It contends the DeBakers' claim of evident partiality can be waived if they knew of the campaign and contributions prior to the arbitration hearing. American Capital addressed the DeBakers' possible knowledge of Kessler's election(s) at the motion hearing, and the trial court concluded that there was nothing in the record that demonstrated the DeBakers were aware of the campaign contributions. At no point did American Capital specifically request an evidentiary hearing to explore this further. In its brief to this court, American Capital does not cite to the trial court record where this request is made. *See* § 809.19(1)(e), STATS. Furthermore, from our examination of the record, an evidentiary hearing to discern the DeBakers' knowledge was never requested.

"It is the often repeated rule in this State that issues not raised or considered in the trial court will not be considered for the first time on appeal." *Wirth v. Ehly*, 93 Wis. 2d 433, 443, 287 N.W.2d 140, 145 (1980).

263

Even though American Capital alluded to the waiver issue, the evidentiary hearing is relinquished due to the lack of a request and argument at the trial court level. Because this request is made for the first time on appeal, we decline to address American Capital's argument that it is entitled to an evidentiary hearing.

Last, the DeBakers assert that American Capital's appeal of the vacatur is frivolous under § 809.25, STATS. They are requesting that we assess attorney's fees and costs against American Capital. Section 809.25(3)(c) delineates when an appeal or cross-appeal is found frivolous. The court must find an appeal frivolous if it finds one or more of the following:

> 1. The appeal or cross-appeal was filed, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another.
> 2. The party or the party's attorney knew, or should have known, that the appeal or cross-appeal was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

Section 809.25(3)(c), STATS.

There is no allegation by the DeBakers that American Capital acted in bad faith, nor is there any evidence as such. It is clear from the legal analysis above that American Capital's appeal had a reasonable basis in law. The law in this area of arbitrator bias and evident partiality is not settled. American Capital's appeal was based on a good faith argument for modification of the law. Therefore, the DeBakers' assertion of frivolous appeal is without merit.

*By the Court.*—Order affirmed. No costs are awarded to either the appellants or respondents.