James and Michele DeBaker, Ray and Donna
Mroczynski and Ken and Carol Neuser, Claimants-
Respondents,

v.

Pravin Shah and American Capital Financial Ser-
vices, Inc., Respondents-Appellants-Petitioners.

Supreme Court

*No. 94–0255. Oral Argument April 26, 1995.—Decided June
20, 1995.*

(Also reported in 533 N.W.2d 464.)

For the respondents-appellants-petitioners there were briefs by *Michael H. Schaalman, Ronni M. Flannery* and *Quarles & Brady,* Milwaukee and oral argument by *Michael H. Schaalman.*

For the claimants-respondents there was a brief and oral argument by *James A. Bolt,* Milwaukee.

WILCOX, J. This case is before the court on a petition for review filed by Pravin Shah and American Capital Financial Services, Inc. (collectively, "Shah") from a published decision of the court of appeals. *See DeBaker v. Shah,* 187 Wis. 2d 252, 522 N.W.2d 268 (Ct. App. 1994). Shah was sued by James and Michele DeBaker, Ray and Donna Mroczynski, and Kenneth and Carol Neuser (collectively, "the DeBakers"), alleg-

ing violations of various securities laws and misrepresentations in connection with the sale of limited partnerships and mutual funds by Shah to the DeBakers. Pursuant to a contractual agreement, the dispute went to arbitration before a panel of arbitrators, one of whom was Frederick Kessler. The issue presented for review is whether Arbitrator Kessler was "evidently partial" under sec. 788.10(1)(b), STATS., because he did not disclose prior to the arbitration that he received campaign contributions from members of Quarles & Brady, the law firm representing Shah in the arbitration.[1] The circuit court for Brown County, Peter J. Naze, judge, ruled that Arbitrator Kessler was "evidently partial" within the meaning of sec. 788.10(1)(b). The court of appeals affirmed. We conclude that Arbitrator Kessler was not evidently partial and, therefore, reverse the decision of the court of appeals.

This case has its genesis in the financial investment strategies recommended by Shah to the DeBakers. Shah made several investments for the DeBakers which performed poorly and lost substantial

---

[1] As an initial matter, we note that at the court of appeals there was some dispute as to whether the state or federal provision regarding arbitrator partiality should serve as the basis for a discussion of the underlying issue. The court of appeals concluded that the state statute—sec. 788.10, STATS.—was the appropriate provision under which to proceed. *DeBaker,* 187 Wis. 2d at 259, 522 N.W.2d at 271. The court noted, however, "[b]ecause § 788.10 is nearly identical to the FAA section on grounds for vacating arbitration awards, federal cases construing evident partiality are persuasive." *See Diversified Mgmt. Servs., Inc. v. Slotten,* 119 Wis. 2d 441, 446, 351 N.W.2d 176, 179 (Ct. App. 1984). *Id.* On appeal, neither party presents an argument as to why sec. 788.10 should not apply. Thus, we proceed under the state statutory provision.

sums of money for the investors. On March 28, 1991, the DeBakers filed suit in an attempt to hold Shah liable for the sums lost due to his investment strategies. Shah responded to the complaint and thereafter filed a motion to compel arbitration pursuant to a contractual agreement which required any dispute be conducted under the rules of the National Association of Securities Dealers, Inc. (NASD). In September 1991, the circuit court granted the motion to compel and stayed the action pending the arbitration.

In April 1992, the DeBakers filed a complaint with the NASD. On March 1, 1993, the NASD appointed a three-member panel to conduct the arbitration hearing. Frederick Kessler was appointed to serve as chairman of the panel. Prior to the arbitration, Kessler was active in politics. He ran twice for Milwaukee county circuit judge and three times for U.S. Representative to Congress. In 1992, Kessler conducted a congressional primary campaign and received political campaign contributions of $1,475 from five members of the Quarles & Brady law firm, which represents Shah in this suit. None of the attorneys in the present lawsuit personally made contributions to any of Kessler's campaigns. Kessler was unsuccessful in the congressional primary and, consequently, his bid for congress ended in early September of 1992, some six months prior to his appointment as an arbitrator in the case.

Pursuant to the NASD Code of Arbitration Procedure sec. 21 (Dec. 1993), arbitrators are required to fill out "Arbitrator Disclosure" forms with information on education, employment, and possible conflicts.[2] Sec-

---

[2] Section 21 provides, in relevant part:

Notice of Selection of Arbitrators
 Sec. 21. The Director of Arbitration shall inform the parties of the arbitrators' names and employment histories for the past ten

tion 23(a) mandates that arbitrators must disclose "any circumstance which might preclude such arbitrator from rendering an objective and impartial determination." Section 23(c) asserts:

> The obligation to disclose interests, relationships, or circumstances that might preclude an arbitrator from rendering an objective and impartial determination described in subsection (a) hereof is a continuing duty that requires a person who accepts appointment as an arbitrator to disclose, at any stage of the arbitration, any such interests, relationships, or circumstances that arise, or are recalled or discovered.

There is no dispute that the NASD disclosure forms do not have a section specifically requiring disclosure of unsuccessful past political campaigns.

Prior to the hearing, the arbitrators in the instant case were provided with the applicable NASD disclosure forms. Arbitrator Kessler disclosed his employment as an arbitrator, his service as a Milwaukee county circuit judge, and his school experience at the University of Wisconsin. In addition, he listed the following companies as presenting possible conflicts of interest: Robert Baird, Dain Bosworth Inc., and Thompson McKinnon Securities, Inc. Arbitrator Kessler did not list the fact that he had been unsuccessful in a congressional bid nor did he disclose Quarles & Brady as a possible conflict of interest because of political campaign contributions from attorneys associated with the law firm.

---

(10) years, as well as information disclosed pursuant to Section 23, at least eight (8) business days prior to the date fixed for the first hearing session. A party may make further inquiry of the Director of Arbitration concerning an arbitrator's background.

The arbitration panel conducted a three-day hearing on April 20–22, 1993. Following presentation of the DeBakers' case-in-chief, Shah successfully moved the panel for a directed verdict, and the arbitration panel dismissed the DeBakers' claims.[3] In September 1993, the DeBakers petitioned the circuit court with a motion to vacate the arbitration decision based on the fact that there was evident partiality on the part of Arbitrator Kessler because he failed to disclose the campaign contributions form the attorneys associated with Quarles & Brady. The circuit court concluded that Arbitrator Kessler's failure to disclose constituted evident partiality. Accordingly, the court granted the DeBakers' motion to vacate the arbitration award. Shah appealed.

The court of appeals affirmed the circuit court's order vacating the arbitration award. *DeBaker,* 187 Wis. 2d at 263, 522 N.W.2d at 273. The court explained that five attorneys from Quarles & Brady had donated to Arbitrator Kessler's congressional campaign and "[t]hese contributions and failure to disclose them constitute evident partiality." *Id.* In reaching its decision, the court of appeals looked to two cases from this court for guidance: *School Dist. of Spooner v. Northwest United Educators,* 136 Wis. 2d 263, 401 N.W.2d 578 (1987); and *Richco Structures v. Parkside Village, Inc.,* 82 Wis. 2d 547, 263 N.W.2d 204 (1978). Shah petitioned

---

[3] The issue of whether a directed verdict was appropriately granted by the arbitration panel is not at issue in this case and, therefore, we pass no judgment as to its merit. In its oral ruling, the circuit court stated that it found no reason to question the decision of the arbitration panel to grant a directed verdict in favor of Shah. Specifically, the court declared that the DeBakers' argument contesting the directed verdict was without "any merit."

this court for review of the court of appeals' decision, which was accepted on October 24, 1994.

Resolution of the issue of whether there is evident partiality on the part of an arbitrator is a question of law. *School Dist. of Spooner,* 136 Wis. 2d at 269, 401 N.W.2d at 580. This court decides questions of law *de novo,* but may look to the decisions of the lower courts for guidance. *Id.*

"Because the policy of this state is to foster arbitration as an alternative to litigation, arbitration awards are presumed to be valid." *Richco Structures,* 82 Wis. 2d at 553, 263 N.W.2d at 208. An arbitration award will only be set aside where one of the grounds for vacatur under sec. 788.10(1), STATS., are present. *Id.* Section, 788.10(1) provides:

> **Vacation of award, . . .. (1)** In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:
>
> (a) Where the award was procured by corruption, fraud or undue means;
>
> (b) Where there was evident partiality or corruption on the part of the arbitrators, or either of them;
>
> (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;
>
> (d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual,

112

final and definite award upon the subject matter submitted was not made.

At issue in the present case is subsection (b) relating to whether there was "evident partiality" on the part of the arbitrator. The evident partiality phrase is not defined in the statutes but has been considered twice before by this court, in *Richco Structures* and *School Dist. of Spooner.*[4]

---

[4] The DeBakers also direct this court to *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145 (1968). In *Commonwealth Coatings,* a plurality of the Supreme Court construed the Federal Arbitration Act, 9 U.S.C. § 10(b), the substantial equivalent of sec. 788.10(1)(b), STATS., as requiring that arbitrators meet the ethical standards of federal judges and avoid "even the appearance of bias." *Id.* at 148–50. Section 10(b) of the federal act provides, in relevant part, "[w]here there was evident partiality . . . in the arbitrator" an arbitration award may be vacated. The federal court of appeals considering the "evident partiality" phrase have not followed the *Commonwealth Coatings* plurality; rather, they have adopted the reasoning of Justice White's concurrence in the case which recognizes that arbitrators, who are often effective because of their position in the marketplace, should not be disqualified because of a business relationship if it is disclosed or is de minimis. *Id.* at 150 (White, J., concurring). *See, e.g. Health Services Management Corp. v. Hughes,* 975 F.2d 1253, 1264 (7th Cir. 1992) (mere appearance of bias does not disqualify an arbitrator); *Toyota of Berkeley v. Automobile Sales men's Union, Local 1095, United Food and Commercial Workers Union,* 834 F.2d 751, 755–56 (9th Cir. 1987) (listing court of appeals that have embraced Justice White's concurrence), *cert. denied* 486 U.S. 1043 (1988); *Tamari v. Bache Halsey Stuart Inc.,* 619 F.2d 1196, 1200 (7th Cir.), *cert. denied,* 449 U.S. 873 (1980) (before setting aside an award for arbitrator partiality, "[t]he interest or bias . . . must be direct, definite and capable of demonstration rather than remote, uncertain or speculative").

In *Richco Structures,* the court interpreted sec. 788.10(1)(b), STATS., in a manner so as to achieve the legislative objective of striking "the proper balance between ensuring finality of arbitration awards and ensuring justice and fairness (and the appearance of justice and fairness)." *Richco Structures,* 82 Wis. 2d at 560, 263 N.W.2d at 212. Affirming an order to vacate an arbitration award on the ground of evident partiality, the court held:

> [T]he neutral arbitrator must disclose at the outset the relationships or transactions he or she has had with the parties or with the representatives of the parties to the arbitration proceeding. The neutral arbitrator must also disclose any facts which might indicate to a reasonable person that the arbitrator has or might reasonably be supposed to have an interest in the outcome of the arbitration, or which may reasonably support an inference of or the appearance of the existence of bias, prejudice, partiality, or the absence of impartiality. Thus, we construe "evident partiality" to include proof of a neutral arbitrator's failure to disclose these facts and relationships.

*Id.* at 558–59, 263 N.W.2d at 211 (footnote omitted). In addition, the court set forth the test for vacatur on the ground of evident partiality:

> When there is nondisclosure at the outset of arbitration, the test for vacatur on the ground of evident partiality is whether the reasonable person, as a party to the arbitration proceeding, upon being advised of the undisclosed matters, would have such doubts regarding the prospective arbitrator's impartiality that he or she would investigate further, would demand that the arbitration be conducted on terms which would provide checks on

114

the arbitrator's exercise of discretion, or would take other protective measures to assure an impartial arbitration and award.

*Id.* at 562, 263 N.W.2d at 213.

In *School Dist. of Spooner,* the court further interpreted sec. 788.10(1)(b), STATS. In reversing a court of appeals' decision that there was no evident partiality, the court explained that "a finding of evident partiality may be based on any undisclosed facts which are evidence of impartiality [sic]; actual impartiality or facts from which partiality is a foregone conclusion are not required." *School Dist. of Spooner,* 136 Wis. 2d at 272, 401 N.W.2d at 582. In "modifying" the requirements of *Richco Structures* regarding evident partiality and an arbitrator's duty to disclose, the court held that "arbitrators must disclose, prior to hearing a dispute, any past employment with a party to the dispute or . . . with an entity that supplies counsel for a party to the dispute." *Id.* Thus, under *School Dist. of Spooner,* any time an arbitrator fails to disclose employment with a party or an entity that supplies counsel to a party, there is evident partiality under sec. 788.10(1)(b) and the award must be vacated.

The dissent in *School Dist. of Spooner* noted that the majority in that case essentially overruled *Richco Structures* and its interpretation of sec. 788.10(1)(b), STATS. *See School Dist. of Spooner,* 136 Wis. 2d at 273–74, 401 N.W.2d at 582 (Abrahamson, J., dissenting). The dissent explained:

> The majority equates the words "evidence of possible partiality" with the statutory phrase "evident partiality," thereby amending the statutory test with a play on words. The majority is saying that if there is any evidence, that is, any undis-

closed fact, that tends to make the existence of partiality possible, then there is "evidence of possible partiality," which equals "evident partiality." The majority then concludes that since an undisclosed prior employment relationship is always evidence of possible partiality, an undisclosed prior employment relation is evident partiality per se. No matter how remote in time the employment was, how limited the length of employment, or how removed the nature of the past employment from the circumstances in the case, the same inflexible per se rule requires vacating the arbitration award for the arbitrator's failure to disclose the prior employment.

*Id.* 274–75, 401 N.W.2d at 583. We conclude that the per se rule set forth in *School Dist. of Spooner* is inappropriate and hereby expressly overrule its use in cases considering the evident partiality of an arbitrator. The standard set forth in *School Dist. of Spooner* substantially weakens the finality of the arbitration process by making it too easy to challenge the ultimate award. Further, by protracting the process, the case thwarts the goals of arbitration as both an inexpensive and expeditious process. See *Employers Ins. of Wausau v. Jackson,* 190 Wis. 2d 597, 610, 527 N.W.2d 681, 686 (1995) ("arbitration is meant to be a swift and inexpensive process that is guided by a contractual agreement"). Accordingly, we reaffirm the use of the *Richco Structures* reasonable person test in determining whether an arbitrator who has failed to make a disclosure acted in an evidently partial manner contrary to sec. 788.10(1)(b).

To restate the *Richco Structures* standard, "evident partiality" exists only when a *reasonable person* knowing the previously undisclosed information would

116

have had "such doubts" regarding the impartiality of the arbitrator that the person would have taken action on the information. "In other words, a reasonable person would conclude it 'evident,' that is clear, plain, and apparent from the undisclosed information, that partiality is so likely that action was required." *School Dist. for Spooner,* 136 Wis. 2d at 275–76, 401 N.W.2d at 583 (Abrahamson, J., dissenting). Put another way, the standard is not simply that a reasonable person, upon learning of the undisclosed information, would investigate further. The standard is whether the reasonable person, after further investigation, would conclude that "partiality is so likely that action was required."[5] This test, while requiring full disclosure of all relevant considerations at the outset of the arbitration process, does not "require an arbitrator to reveal every facet of his or her life." *Richco Structures,* 82 Wis. 2d at 561, 263 N.W.2d at 212. Finally, the standard for proving the invalidity of an award is met only upon a showing by the proponent that there exists clear and convincing evidence that the arbitrator in question demonstrated "evident partiality." *Id.* at 553, 263 N.W.2d at 209.

---

[5] This test is similar to the federal courts that have considered the evident partiality phrase as set forth in 9 U.S.C. § 10 (b). *See Morelite Const. Corp. v. New York City Dist. Council Carpenters Benefit Funds,* 748 F.2d 79, 84 (2nd Circ. 1984) ("[W]e hold that 'evident partiality' within the meaning of 9 U.S.C. § 10 will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration."). *See also Toyota of Berkely,* 834 F.2d at 756 (to show evident partiality on part of arbitrator party alleging bias must demonstrate facts that create a "reasonable impression of partiality"); *Dowd v. First Omaha Securities Corp.,* 495 N.W.2d 36, 43 (Neb. 1993) (adopting *Morelite Const.* test as appropriate for considering whether arbitrator was evidently partial under federal law).

Here, there is no dispute as to the following facts: (1) Arbitrator Kessler received political contributions of $1,475 from several attorneys associated with Quarles & Brady; (2) the law firm representing Shah in this matter is Quarles & Brady; (3) the attorneys representing Shah, although affiliated with Quarles & Brady, did not contribute to the campaign of Arbitrator Kessler; (4) the contributions were not disclosed by Arbitrator Kessler prior to commencement of the arbitration process; (5) the contributions were part of the public record as found in the Federal Election Commission Selected List of Receipts and Expenditures; (6) Arbitrator Kessler supplied his past employment history as required by the NASD Code of Arbitration Procedure sec. 21; (7) the DeBaker's did not request any further inquiry as allowed in sec. 21; and (8) there is no evidence that Arbitrator Kessler acted improperly during the arbitration.

Applying the *Richco Structures* interpretation of sec. 788.10(1)(b), STATS., to the undisputed facts at hand, we conclude that Arbitrator Kessler was not "evidently partial." Simply put, the DeBaker's have not presented clear and convincing evidence that a reasonable person would conclude it clear, plain, and apparent from the undisclosed information, that partiality is so likely that action was required. First of all, none of the attorneys involved in the representation of Shah made any contributions to Arbitrator Kessler's congressional campaign. Second, all of the contributions were publicly recorded and could have been accessed by the DeBaker's with little effort. Because the information is public, there can be no allegation that Arbitrator Kessler intended to somehow hide the fact that he had received contributions from attorneys

118

associated with the Quarles & Brady law firm. Quite likely, Arbitrator Kessler simply determined that any verbal or written disclosure of the contributions was unnecessary because it was not at all related to the underlying dispute. We recognize that undisclosed matters that are of public record can, under some circumstances, constitute clear and convincing evidence that partiality is so likely that action was required. The issue is whether a reasonable person would have acted having knowledge of the information in the public record. Third, the five lawyers' total contributions were relatively small. Fourth, there is no allegation that Arbitrator Kessler had a financial relationship with Shah or his counsel. Finally, to conclude that an arbitrator demonstrates evident partiality simply based on non-disclosure of a publicly recorded and relatively small political campaign contributions would impose too great a burden on the system.

██

The DeBakers point to a separate unrelated arbitration action as support for their theory that Arbitrator Kessler was evidently partial. In *Egland v. D.H. Blair et al.,* NASD Arbitration Case No. 92–03182, Kessler was appointed as an arbitrator. The matter involved a dispute against a stockbroker as in the case at hand. As here, attorneys from Quarles & Brady represented the stockbroker. In reviewing Federal Election Commission reports, the claimants determined that attorneys from Quarles & Brady had donated to the political campaign of Kessler. Consequently, the claimants requested that Arbitrator Kessler be removed from the case for cause. The NASD granted the request and appointed a different arbitrator to hear the case. The DeBakers argue that the *Egland* matter is on "all fours" with the present case

and should be construed by this court as proving that Arbitrator Kessler acted with evident partiality. We are not persuaded.

First, the determination to remove Arbitrator Kessler from the *Egland* matter says nothing other than "[y]our challenge for cause against Frederick P. Kessler has been granted." Consequently, there is no specific conclusion as to whether Kessler acted contrary to the arbitration statutes and, more specifically, whether by nondisclosure of the contributions he demonstrated "evident partiality" under sec. 788.10(1)(b), STATS. Second, even if we were to construe the removal as finding evident partiality, the NASD ruling has no precedential effect on this court. And finally, the NASD does not set forth the legal standards to be utilized in this state, that is a function reserved specifically for the supreme court.

In sum, we reaffirm the use of the *Richco Structures* reasonable person test in determining whether an arbitrator who has failed to make a disclosure of information acted with evident partiality contrary to sec. 788.10(1)(b), STATS. Further, we conclude that under the facts of this case, the DeBakers have not presented clear and convincing evidence that Arbitrator Kessler was evidently partial and, therefore, they are not entitled to a vacatur of the arbitration award entered against them. Arbitrator Kessler's relationship with Quarles & Brady as a whole was attenuated at best, and was non-existent in relation to the specific attorneys representing Shah in the arbitration. Consequently, the decision of the court of appeals is reversed and the case remanded to the circuit court for entry of the arbitration award dismissing the claims asserted by the DeBakers.

*By the Court.*—Decision of the court of appeals reversed and cause remanded.

Justice ROLAND B. DAY took no part in this decision.